IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOPHIA KIWANUKA

    Plaintiff

v.                                                  CA No. <u>110-cv-01336- RBW</u>

ANNE MARGRETH BAKILANA, ET UX.

    Defendants

## MEMORANDUM IN SUPPORT OF MOTION FOR DISMISSAL AND/OR SUMMARY JUDGMENT

COMES NOW the Defendants, via undersigned counsel, and pursuant to FED. R. CIV. P. 12 (B) (3)(6)(C)(D), do hereby properly move to dismiss the Complaint *in toto* and for the following reasons:

## STATEMENT OF THE CASE

The parties had a contractual relationship whereby the Plaintiff voluntarily agreed, on two (2) separate occasions, to come to the United States to reside with the Defendants in the State of Virginia. She had been a family friend from Tanzania and even resided with Defendants' extended family there, as well. Upon arrival in the United States, she worked as a domestic for the Defendants but, despite her own phone, keys and metrorail card, alleges that she was restricted and taken advantage of and beyond any issues related simply to wages. Her complaints, as embodied in multiple counts, allege involuntarily servitude, forced labor, minimum wage violations, unjust enrichment, breaches of contract and various torts, including negligence, fraud and intentional infliction of emotional distress.

## GENERAL STANDARDS OF REVIEW

1

The applicable standards for review of the instant Motion are well established, and as outlined in Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628 (C.A.3 (Pa.), 1990)

> In reviewing a dismissal for failure to state a claim, we must accept the factual allegations as true and we may affirm the dismissal only if it appears certain that plaintiffs can prove no set of facts which would entitle them to relief. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d. Cir.1988) (citing D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984)).

Craftmatic, *id.* However, a Judge is not bound to accept as true a legal conclusion couched as a factual allegation nor which do not rise above speculation. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L. Ed.2d 929 (2006).

> This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99. [While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, (on a motion to dismiss, courts **"are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level**, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"),3 on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. [550 U.S. 556] Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992; Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic, *at 556 (emphasis added).*

*See also* Conley v. Gibson 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)(Dismissal when there are no set of facts alleged which, if proven, would entitle the Plaintiff to relief). But,

2

this "no set of facts" standard requires that there be a "reasonably founded hope" that a Plaintiff will be able to make a case in order for that case to survive. Bell Atlantic, at 562.

> On such a focused and literal reading of Conley's "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. 425 F.3d, at 106, 114. **It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case,** see Dura, 544 U.S., at 347, 125 S. Ct. 1627, (quoting Blue Chip Stamps, 421 U.S., at 741, 95 S. Ct. 1917); Mr. Micawber's optimism would be enough.
>
> Seeing this, a good many judges and commentators have balked at taking the literal terms of the Conley passage as a pleading standard. See, e.g., Car Carriers, 745 F.2d at 1106 ("Conley has never been interpreted literally" and, "[i]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory" (internal quotation marks omitted; emphasis and omission in original); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1155 (CA9 1989) (tension between Conley's "no set of facts" language and its acknowledgment that a plaintiff must provide the "grounds" on which his claim rests); O'Brien v. Di Grazia, 544 F.2d 543, 546, n. 3 (CA1 1976) ("[W]hen a plaintiff . . . supplies facts to support his claim, **we do not think that Conley imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional . . . action into a substantial one**"); McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (CA6 1988) (quoting O'Brien's analysis); Hazard, From Whom No Secrets Are Hid, 76 Texas L. Rev. 1665, 1685 (1998) (describing Conley as having
>
> "turned Rule 8 on its head"); Marcus, The Revival of Fact Pleading Under the Federal Rules of Civil Procedure, 86 Colum. L. Rev. 433, 463-465 (1986) (noting tension between Conley and subsequent understandings of Rule 8).

Bell Atlantic, at 562 ( emphasis added).

In addition, in applying this standard, this Court is obligated to only make *reasonable* inferences from the allegations, as stated in Lerner v. Fleet Bank, N.A., 318 F.3d 113 (2nd Cir., 2003 *cert denied* 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed.2d 424 (2003):

> "In reviewing the district court's dismissal under either Fed.R.Civ.P. 12(b)(6) or 12(b)(1),

we accept the following factual allegations contained in plaintiffs' complaints as true and draw all reasonable inferences in favor of plaintiffs *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Fed.R.Civ.P. 12(b)(6)); *McGinty v. State of New York*, 193 F.3d 64, 68 (2d Cir.1999) (Fed.R.Civ.P. 12(b)(1))" Lerner, id.

For all the reasons and arguments contained herein, the Defendants contend that there are serious legal issues that prevent the claims, even if proven, to entitle the Plaintiff to relief. Craftmatic. In addition, there are instances where her allegations are simply requiring unreasonable inferences to be drawn in her favor. Lerner. Bell Atlantic.

To the degree that other exhibits are referred to that are not attached to the Complaint, (such as Exhibit "A" to this Memorandum, which is of record in the related criminal case, or Exhibit "G" to another Plaintiff's pleading of record in this case), Defendants seek Summary Judgment. FED. R. CIV. P. 12 (d). Boro Hall Corp.v. General Motors Corp, 124 F. 2d 822 (C.C.A.2) (1942) *cert. denied* 317 U.S. 695, 63 Ct. 436, 87 L. Ed.556 (1943)(Use of extraneous material results in the Motion being treated under Rule 56 as a Motion for Summary Judgment).

FACTS AS ALLEGED AND/OR NOT IN GENUINE DISPUTE

The only contract(s) at issue were voluntarily entered into or renewed in 2004, 2006 and 2008 between Defendant BAKILANA and the Plaintiff, solely. See Complaint, at paragraphs 24, 32 and 59. The contracts were for employment of the Plaintiff as a domestic servant. See Complaint, at paragraph 20. The reason for the gaps in time is because, between July, 2006 and January, 2009, the Plaintiff did not even reside with the Defendants but, was back in Tanzania. See Complaint, at paragraphs 47, 51 and 63. When the Plaintiff did return in January, 2009, she came back to reside with the Defendants in Virginia. See Complaint, at paragraph 13.

The Plaintiff left the employ of the Defendants on August 2, 2009. See Complaint, at paragraph 80. Her suit was filed on August 9, 2010. In the interim, she had cooperated with

governmental authorities on any alleged forced servitude and wage claims. However, the only actual crimes with which Defendant BAKILANA (and she alone) was charged was for giving false statements to Justice Department authorities. See Complaint, at paragraph 81. *See also* Exhibit A to the Complaint.[1] Importantly, those claims were resolved in great measure by the payment of restitution of lost wages for the Plaintiff and through her counsel of record in the amount of $41,626.80. See Exhibit A to the Complaint.[2]

Most of the allegations in the civil case at bar pertain to the earlier period of time from 2004 to 2006. See Complaint, at paragraphs 20 through 46. For example, the alleged instances of negligence involving broken glass and boiling water took place in 2006. See Complaint, at paragraph(s) 32, et seq., including 39 and 40. These allegations form the basis for Count 7 in Negligence and as embodied in paragraphs 117 and 118 of that Count.

Likewise, the allegations of Fraudulent Inducement contained in Count 8 also clearly date back to alleged broken promises that predated the first trip to the United States in 2004 through and including 2006 at the latest. See Complaint, at paragraphs 122 and 125 for the substance of those claims regarding working conditions, schedules and the like. None of them pertain to any alleged promises to come back to work for another family, as contained in paragraph 60 and as

---

[1] Exhibit B is a Statement of Facts from the criminal case, ironically brought in the Eastern District of Virginia after the Justice Department interviews in question took place in the District of Columbia. However, the Plaintiff has left out the Supplemental Statement of Facts, which is being attached hereto and is incorporated herein as Exhibit "A" to this Memorandum.

[2] Exhibit G to Plaintiff's Opposition to Defendants' Motion for Extension of Time to Answer the Complaint, in this case, at page two (2) characterizes the related criminal restitution as being for "..**the full amount of the victim's losses**" See Memorandum of the Hon. Leonie Brinkema from the Eastern District of Virginia, dated October 12, 2010. (Emphasis added).

was relevant to the second trip in 2009. [3]

Even Counts 9 and 10 clearly and on their face pertain to alleged Breaches of Contract in 2004 and 2006, respectively. See Complaint, at paragraphs 132 and 138. The remaining Count 11 for Breaches of Contract pertains to the second trip in 2009 and includes a claim for "overtime" for a "domestic servant". See Complaint, at paragraph 144.

As for the remaining Counts pertaining to Involuntary Servitude (Counts I, II) Forced Labor (Count III), Minimum Wage violations (Count IV), Unjust Enrichment (Count V), and Emotional Distress (Counts VI, XII), the allegations are not specific in time but, seem to encapsulate all relevant time frames.

ARGUMENT

   A. COUNTS I, II AND III - ALLEGED SERVITUDE AND LABOR CLAIMS

   (I) There are no recognizable claims of "Involuntary Servitude".

These Counts will be handled collectively, as they involve similar allegations and issues of law. To the degree that the Complaint alleges "involuntary servitude", her supporting claims are not sufficient as a matter of law. Those claims must involve compulsion of services by the use or threats of physical or legal coercion. United States v. Kozminski, et al., 487 U.S. 931, 949, 108 S. Ct. 2751, L. Ed. 2d 788 (1988)(Wherein the high court ruled "compulsion through psychological coercion" as being insufficient, whether it be "speech or other conduct" intended to get a reluctant person to work.).

---

[3] Count 13 also in Fraud appears to be duplicative of the same time frame, pertains to and/or contains the exact same allegations and should be dismissed either voluntarily or by the Court as not constituting a recognizable and separate cause of action. E.g. working conditions, work schedule and ability to attend school. There are no differences in the claims.

Specifically, the Court in <u>Kozminski</u> specifically rejected the Government's interpretation of "involuntary servitude" as prohibiting the compulsion of services by any means, that, "....from the <u>victim's point of view</u>, either leaves the victim with no tolerable alternative but, to serve the defendant or deprives the victim of the power of choice". <u>Id.</u> at 949 (emphasis added). Rather, the Court found that "prosecutors and juries" should <u>not</u> be given the "....inherently legislative task of determining what coercive activities are so morally reprehensible that they should be punished as crimes". <u>Id.</u> at 949. [4] Rather, the Court insisted on a more objective analysis and affirmed a reversal of any criminal convictions of the same Counts at issue in the case at bar.

Here, there are not even the allegations sufficient to meet the test in <u>Kozminski.</u> At best, the Complaint refers to only two (2) instances, one in 2006 and another in 2009, when BAKILANA "yelled" at her. However, even in those instances, they had nothing whatsoever with trying to coerce any labor. To the contrary, they involved either intentional or unintentional interactions with a child, or interferences with the discipline thereof. <u>See</u> Complaint at 37, 72. Even other forms of actual coercion to work or allegations pertaining to working conditions are merely corroborative and not independent grounds. <u>Kozminski,</u> at 952, citing the true language and intent of the Thirteenth Amendment in prohibiting slavery and as previously applied in <u>United States v. Shackney</u>, 333 F.2d 475 (CA2 1964).

Specifically addressing 28 USC 1584, the Court found, regarding its enactment and the intent of Congress in employing constitutional language from the Thirteenth Amendment, that "At that time, all of the Court's decisions identifying conditions of involuntary servitude had involved

---

[4] In the related criminal case, it should be noted that neither Defendant was charged with any of the Counts allegedly relevant, here. <u>See</u> Complaint, at Exhibit A.

compulsion of services through the use or threatened use of physical or legal coercion. See, e.g., Clyatt v. United States, supra; United States v. Reynolds, *supra*; Pollack v. Williams, supra; Bailey v. Alabama, supra:" Kozminski, at 945.

When the actual language of 1584 is examined closely, it becomes readily apparent why the Supreme Court ruled the way it did. The statute relies specifically on particular actions, including an actual or attempted kidnapping, aggravated sexual abuse or even murder. 28 USC 1584. Likewise, Section 1590 refers to the exact same examples of coercion; and, to the degree that Section 1589 essentially refers to involuntary servitude ("forced labor"), it also references force, threats of force, physical restraint or threats of physical restraint; threats of harm; abuse of law or legal process; or threats of harm or physical restraint. 28 USC 1590, 28 USC 1589[5].

As a result of the legislative intent, as clearly addressed in Kozminski, and the similar language of all relevant statutes being relied upon, Counts I, II and III cannot survive and should be dismissed as a matter of law. Even taken at face value, the allegations made by the Plaintiff simply do not constitute or equal the requirements for the Counts included. Craftmatic, *supra*.

B. COUNTS IV, V - ALLEGED WAGE VIOLATION AND ENRICHMENT CLAIMS

(I) Prior Payments Constituting Satisfaction of the Claims

These counts pertain to the rate of pay and alleged lost wages of the Plaintiff. However,

---

[5] In the Conference Report for Section 1589, while reference was made to "psychological methods of coercion" to satisfy the most minimal language of "threat of serious harm", the examples pertained to "traffickers" who threaten "harm to third persons", "restrain[t}" of their victims or "dire consequences", and regardless, these examples are not alleged, here. H. R. Conf. Rep. No 106-939. *See also* U.S. v. Bradley, et al., 390 F.3d 145, 150-152 (1st Cir., 2004) *vacated on other grounds* 545 U.S. 1101, 125 S. Ct. 2542 (2005)(Wherein the Defendants failed to object to a jury instruction that did not differentiate between threats of dire versus non dire consequences, and/or legitimate versus illicit warnings, leaving open the question of error.)

her first problem is that she was already paid restitution in the related criminal case. See Complaint, at Exhibit B, page 6. U.S. v. Coleman, 997 F.2d 1101 (CA 5 Texas, 1993)*cert. denied* 510 U.S. 1077, 114 S. Ct. 893, 1271 L.Ed. 2d 86 (1994)(Wherein the Court precluded even a criminal restitution order under the Victim and Witness Protection Act in an instance where there had already been civil restitution). While the Court in Coleman admittedly had a release in hand, the principle is applicable.

Where the Plaintiff has already had her wages paid, she should not be permitted to again seek a double recovery, as the whole idea of restitution is to "restore the property the party harmed", id, at 1107 citing United States v. Rico Industries, Inc., 854 F.2d 710, 715 (5th Cir, 1988) *cert. denied* 489 U.S. 1078, 109 S. Ct. 1529 (1989)

> "Further, in light of section 3663(e)(2)(A), which requires a setoff against a restitution order of damages paid in any federal or state civil proceeding, this court has considered the effect of release and settlement agreements pursuant to those proceedings on subsequent liability for restitution. In United States v. All Star Industries, 962 F.2d 465, 477 (5th Cir.), cert. denied --- U.S. ----, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992), this court stated that:
>
> While a court may offset restitution in a criminal's case by the amount of a civil settlement to avoid double recovery by victims, the availability of such an offset depends upon what payment was made in the settlement, whether the claims settled involved the same acts of the defendants as those that are predicates of their criminal convictions, and whether the payment satisfies the penal purposes the district court sought to impose.United States v. Rico Industries, Inc., 854 F.2d 710, 715 (5th Cir.1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989).
>
> In Rico Industries, the court examined a restitution award following a civil settlement agreement. There the court held that "[i]f [the settlement] is based on the same acts, the object of restitution--to restore the property the party harmed-- would indicate that [the Defendant] be credited with the amount of the settlement." 854 F.2d 710, 715".

Coleman, at 1107. **See also** U. S. v. Buchey, 810 F2d 456, 461 (CA 4 [W.Va.] 1987)(Wherein,

*inter alia*, the Court ruled that it cannot impose restitution for a loss for which the victim has achieved compensation, and that, in such a case, it has "no further role to play".) Regardless, as a matter of general principle, the Plaintiff is not entitled to double recovery and the Defendants are entitled to assert in this motion the defense of any payments already made, including with respect to State Law claims for unjust enrichment. 8.01-275 Civil Remedies and Procedure, VA. CODE (1977)(Plea In Abatement Replaced by Defense by Motion); Kisel v. Amal. Clothing Workers, 169 Va. 574 (1938)(Wherein the Court generally recognized the long standing defense of payment and satisfaction of wages)

These monies paid, amounting to $41,626.80, are intended to cover the wages owed and are clearly enough to cover this alleged debt under the contract(s) or applicable law. The Court can readily see from the Complaint itself that the payment acknowledged by all parties exceeds the claim(s). E.g. $7.50 per hour, 40 hour work weeks from August, 2005 to July, 2006 for overlapping time frames in Counts 9, 10 ($14,400.00), as well as $8.50 per hour, 40 hour work weeks from January to August, 2009 in Count 11 ($13,600.00) See Complaint, at paragraphs 32, 47, 132 and 138 for purposes of Counts 9, 10; and paragraphs 63, 80 and 144 for purposes of Count 11)

(II) Plaintiff is restricted to two (2) years worth of claims, which have been paid.

Secondly, to the extent the Plaintiff is permitted to proceed with these Counts, she cannot do so for monies owed over two (2) years before she filed suit. [6] 28 USC 255 of the Fair Labor

---

[6] This is presuming that the Plaintiff even has standing and the right to pursue a FLSA Act claim. Mathews v. Diaz, 426 U.S. 67, 77, 96 S. Ct. 1883, 1890, 48 L. Ed. 2d 478 (1976)(wherein the Court concluded that a provision of the Social Security Act (SSA) which denied eligibility to aliens for supplemental medical insurance unless the aliens were admitted for

Standards Act (FLSA) precludes the Plaintiff from seeking minimum wages owed more than two (2) years before she files suit. In pertinent part, it requires as follows

> "...[a]ny action commenced on or after May 14, 1947 to enforce any cause of action for unpaid minimum wages....under the [FLSA}
> ........
> (a) if the cause of action accrues on or about May 14, 1947 - may be commenced <u>within two years</u> after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;......" <u>id</u>, at (a)(Emphasis added).

Here, at best, the Plaintiff can go back three (3) years from August, 2010. However, in July of 2007, she was not even residing in the United States with the Defendants and all of her earlier claims dating back to the 2004 and 2006 time periods are time barred.

### (III) <u>No Overtime Can be Recovered by a Resident Domestic</u>

Thirdly, the Plaintiff seems to be seeking overtime for all of her relevant time periods. <u>See</u> Complaint, at paragraph(s) 24, 32 and 59(overtime pay "as required by law") However, the law does <u>not</u> permit such recovery in this case. On one hand, 28 USC 206(f)(1) of the FLSA provides that any employee "who in any workweek is employed in domestic service in a household" shall be paid a minimum hourly wage, with certain exceptions, and Section 207(I) of the Act prohibits

---

permanent residence and resided in the United States for at least five years did not violate the due process clause of the Fifth Amendment).

> "In particular, the fact that Congress has provided some welfare benefits for citizens does not require it to provide like benefits of all aliens. Neither the overnite visitor, the unfriendly agent of a hostile foreign power, the resident diplomat, nor the illegal entrant can advance even a colorable constitutional claim to a share in the bounty that a conscientious sovereign makes available to its own citizens and some of its guests. **The decision to share that bounty with our guests may take into account the character of the relationship between the alien and this country.** (Emphasis added).

an employer from employing an employee in domestic service for a workweek that exceeds 40 hours unless said employee receives overtime compensation.

However, section 213(b)(21) of the Act exempts from the overtime requirement "any employee who is employed in domestic service in a household and **who resides in the household**", and as applied in U.S. v. Sabhnani, 599 F.3d 215 (CA 2, NY, 2010)*cert. filed Oct. 8, 2010.* (Wherein the Court interpreted and applied this exemption strictly despite the government's emphasis on inadequate living conditions, sleeping facilities and food)(emphasis added).

Here, the Plaintiff also emphasizes these same collateral issues but, she clearly resided with the Defendants, as outlined herein and alleged in the Complaint for all relevant times frames. See Complaint, at paragraph 13. Thus, with these facts, she is not entitled to any overtime pay as a matter of law and those claims must be dismissed. 28 USC 213(b)(21). Craftmatic, *supra.*

C. COUNTS 6, 7, 8, 12 AND 13, THE ALLEGED TORTIOUS CONDUCT CLAIMS

None of the Counts included in this section arise under federal law. Thus, they are the state law claims alluded to in the Complaint. See Complaint, at paragraph 10.

(I) Virginia Law Applies and Bars the Claims

Since all of the actions complained of took place in the State of Virginia, its statute of limitations applies to these tort actions. Section 8.01.243, Civil Remedies and Procedures, VA. CODE (2008) provides for a two (2) year statute of limitations for "personal actions for injury to person", including "every action for damages resulting from fraud", and this period begins to accrue from the "date of injury", id at 8.01.230.

(a) Counts 7, 8 and 13 (Negligence and Fraud).[7]

Here, with respect to Counts 7, 8 and 13, the instances complained of took place in 2006 and suit was not filed until 2010, well beyond the two (2) years. See Complaint, at paragraphs 117, 118, 122, 125 and 156 throughout these Counts and pertaining to the specific allegations of negligence or fraudulent representations[8]. Thus, as a matter of law, these Counts are time barred and should be dismissed. Even if proven, the facts do not entitle her to relief. Craftmatic, *supra*.

(b) Counts 6 and 12 (Emotional Distress)

Here, it is clear that at least a part of the claims pertain to the 2004-2006 time frame and are time barred. See Complaint, at paragraphs 110 and 149. Secondly, at least with respect to Count 6 (negligent infliction) there is no specific duty alleged that pertains to Emotional Distress. See Complaint, at paragraph 112. Nor is there any allegation of resulting and actual physical injury. See Complaint, at paragraph 113.

Rather, the Plaintiff simply alleges general negligence in paragraph 111 and emotional distress as a result thereof in paragraph 113, thus lending itself to be a mere repetition of Count 7 (Negligence) with emotional distress as an element of damages. As a result, Count 6 clearly does not present a separate claim upon which relief could be granted. FED. R. CIV. P. 12(B)(6). **See also** Delk v. Columbia Healthcare Corp., 259 Va. 125, 523 S.E.2d 826 (Va., 2000) for the elements of Negligent Infliction of Emotional Distress. The Court in Delk sustained a demurrer to

---

[7] Even under the law of the District of Columbia, there is a three year statute of limitations for both torts and contracts, which would similarly bar the tort claims, as alleged. 12-301 DC Code (2009)

[8] To the degree that Counts 8, and 13 both pertain to fraud, they should be treated together and are duplicative of each other, thus subjecting one to dismissal, at the very least.

13

the same Count wherein the Plaintiff not only had to establish a clear duty but, a clear causality with physical injury.

> "In Hughes v. Moore, 214 Va. 27, 197 S.E.2d 214 (1973), we discussed the elements of a cause of action for negligent infliction of emotional distress. We stated:
>
>> 'We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. We hold, however, that where the claim is for emotional disturbance and physical injury resulting therefrom,
>>
>> there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.'
>
> Id. at 34, 197 S.E.2d at 219; accord Myseros v. Sissler, 239 Va. 8, 9, 387 S.E.2d 463, 464 (1990)
>
> Delk's conclusional allegation that she incurred "severe mental, emotional and physical trauma" is not sufficient to support a cause of action for negligent infliction of emotional distress. Delk failed to plead with specificity that she incurred a physical injury which was the natural result of fright or shock proximately caused by the defendants' alleged negligence. Delk fails to provide any description of her physical injury in her amended motion. Therefore, we hold that the circuit court did not err in dismissing this claim."

Delk,, 523 S. E.2d, at 834 (emphasis added).

Here, the allegations, even if proven by the Plaintiff do not entitle her to relief.

Craftmatic. Conley. As stated herein, with respect to Negligent Infliction of Emotional Distress, she is not alleging any physical injury that is directly related. See Complaint, at 113.

Regarding Count 12 (intentional infliction), many or all of the related claims also seem to relate back to before the Plaintiff's return to Tanzania in July, 2006. See Complaint, at paragraph 36. To the degree that the Court is unsure or unwilling to grant a dismissal with respect to this Count either in part or *in toto*, based upon limitations, the Defendants request relief under FED.

R. CIV. P. 12(E) for a more definite statement on exactly when the intentional infliction took place. Furthermore, in such an instance, the Defendants respectfully request that any denial of their Motion to Dismiss this Count be *without prejudice*, subject to the more definite statement.

D. COUNTS 9, 10 and 11 - THE BREACH OF CONTRACT CLAIMS

(I) The Questions of Applicable Law and Primarily of this Court's Jurisdiction.

With the exception of the contract signed in 2006, all of the contracts seemed to have been signed in Tanzania. See Complaint, at paragraphs 25, 32 and 60. Thus, there may be some relevance to Tanzanian law applying, particularly to the contract application or interpretation. Defendants waive no defenses they may have under that law.

More importantly, for purposes of the instant Motion, the claims for the alleged breaches of these contracts are under State law and thus, do not involve federal questions. Out of an abundance of caution, the Defendants contend that there may be looming a question of this Court's jurisdiction, whether personal or subject matter, for the resolution of these claims. FED. R. CIV. P. 12(b)(2), (h)(3); 28 U.S.C. Section 1332(a)(2)(3). (Requiring at least one "citizen" for diversity jurisdiction) Here, none of the parties are citizens. See Complaint, at paragraph 12, 14, 16 and 17.

If the other counts supporting federal court jurisdiction based upon a federal question are dismissed, this Court should examine its continued jurisdiction. Edwards v. Marin Park, Inc., 356 F.3rd 1058 (9th Cir., 2004)(Addressing dismissal of suit if all claims involving federal questions were dismissed, leaving only state court claims)

(II) Applicable Limitations Apply to Part of the Claim(s)

Presuming jurisdiction, there seems to be no question that, for purposes of this Motion,

15

that the breaches themselves are alleged to have occurred in the United States. See Complaint, at paragraph 70. However, the Complaint's alleged "scheme" dates back to the 2004-2006 time frame. Under DC law, those claims are time barred, completely. id, at 12-301. Even under Virginia law, those claims are time limited retroactive to August of 2005, at best. 8.01-246 (2), Civil Remedies and Procedure, VA. CODE (2008), subject to 8.01-243 (five years, if not two years). Thus, at the very least, to the degree that the claims predate August of 2005 in Count 9, they are time barred under Virginia law. See Complaint, at paragraph 132.

(III) Defendants Contend There has Been Payment and Satisfaction

With respect to any contract claims that can still be timely asserted, the Defendants incorporate their prior contentions with respect to satisfaction and payment. See Memorandum, at page 8, et. seq. ($41,626.80). These monies, intended to cover the minimum wages owed, are clearly enough to cover the debt allegedly owed under the contract(s). The Court can readily see from the Complaint itself that the payment acknowledged by all parties exceeds the claim(s). E.g. $7.50 per hour, 40 hour work weeks from August, 2005 to July, 2006 for overlapping time frames in Counts 9, 10 ($14,400.00), as well as $8.50 per hour, 40 hour work weeks from January to August, 2009 in Count 11 ($13,600.00) See Complaint, at paragraphs 32, 47, 132 and 138 for purposes of Counts 9, 10; and paragraphs 63, 80 and 144 for purposes of Count 11) [9].

As a result of these calculations inherent in the Complaint itself, the claims have been

---

9 Defendants do not waive the defenses of *Collateral Estoppel* or *Res Judicata*. If this Court finds the federal government and the Plaintiff "in privity", then those doctrines may very well bar her restitution, lost wage or contract claims, in particular. Citibank v. Data Lease, 904 F2d 1498 (CA11, Fl., 1998) *cert. denied* 484 U.S. 1062, 108 S. Ct. 1019, 98 L. Ed. 2d 985 (1988)(Laying out the elements of *res judicata*, et al, to wit: a final judgment, a court of competent jurisdiction, the same parties or those in privity, and the same causes of action)

satisfied and should be dismissed. 8.01-275 <u>Civil Remedies and Procedure</u>, VA. CODE (1977)(Plea In Abatement Replaced by Defense by Motion); <u>Kisel v. Amal. Clothing Workers</u>, 169 Va. 574 (1938)(Wherein the Court generally recognized the long standing defense of payment and satisfaction of wages). In essence, there is not a "reasonably founded hope" that the Plaintiff can make a case for additional lost wages. <u>Bell Atlantic</u>, *supra*.

E. OTHER ISSUES

(I) <u>No Liability Of Defendant RAYMOND RWEHUMBIZA</u>

Counts One Through Seven make claims against both "Defendants". However, with the exception of the rather bold and bald accusations pertaining to the "Defendants" either throughout the Complaint and/or in these Counts, there really are no specific references to this Defendant's particular actions. <u>See</u> Complaint, at paragraphs 68-70, for example, with respect to "Defendants" "forcing", "imposing" and/or "requiring" certain chores or tasks in only a general way. In fact, even <u>specific</u> accusations allegedly pertaining to both Defendants and those allegations involving Ms. BAKILANA often conflict. For example, in paragraph 2, the Plaintiff alleges that the "Defendants" took her passport but, then in paragraph 27 she contends that it was BAKILANA that took her passport, with actual inaction by this Defendant. In paragraph 117 within Count 7(Negligence), the Plaintiff contends that "Defendants" owed her a duty to provide a safe working environment; yet, in paragraph 40, she contends that it was "BAKILANA" that left a broken jar, RWEHUMBIZA that tried to help her and "BAILANA" that screamed at this other Defendant not to intervene. Therefore, Count 7 in negligence should be dismissed as to RWEHUMBIZA. <u>Bell Atlantic</u>, supra (the claims must not be "legal conclusions couched as factual allegations", must present a "right to relief beyond the speculative level" and must have a "reasonably founded

...

...

hope" of being made into an actual case.).

For all of the rest of the Complaint, to the degree that particular acts are specified, the Plaintiff actually outlines what Defendant BAKILANA or her directly family overseas, allegedly did wrong. See Complaint, at paragraphs 20 (contact Plaintiff), 23 (arrange passport), 24(employment agreement), 27 (taking passport), 28 (misleading about workshop), 32 (new contract), 36 (screaming), 37 (screaming), 39 (causing spill), 40(shouting not to assist)) 42 (bank account), 43 bank account), 44(avoiding wages), 45 (bank account), 46 (manipulation), 48 (lies to family), 49 (slander), 50(keep passport), 52(keep passport), 53 (keep possessions), 57 (paperwork to return), 59(signing contract), 65(mislead about work schedule), 72 (yelling), 73 (wage scheme), 74 (bank instructions), 75 (forced money transfer),78(refused weekends off), 79 (deportation threat) and 80 (had passport), all coming right before yet being incorporated into all Counts, and covering all issues ranging from allegedly, *inter alia*, arranging contracts to pressuring the Plaintiff to misleading her about a bank account to taking her passport to negligent work conditions to yelling at her and to taking her monies. In fact, as the Complaint points out, it was BAKILANA *alone* that was the subject of the criminal investigation. Id. at 81.

As a result of this failure to specify any actions taken by RWEHUMBIZA, there simply are no grounds to hold him liable in Counts 1-7 and he should be dismissed therefrom. FED. R. CIV. P. 12(B)(6) i.e. failure to state a claim against him, in particular. *See also* Bell v. Preferred Life Assurance Co. Of Montgomery, Ala., 320 U.S. 238, 64 S. Ct. 5 (1943)(Wherein the Court reversed the dismissal on the pleadings but, *only after finding the allegations to be sufficient* and

additionally, for what were really legitimate issues of proof of damages.)[10] Here, there are no such sufficient allegations as to this Defendant. For further example, as to Counts 4 (Minimum Wages) and 5 (Unjust Enrichment), the related contract to pay wages were entered into by BAKILANA alone. See Complaint, at 24, 32 and 59. There are no actual factual allegations involving RWEHUMBIZA and thus, no reasonable inferences that can be drawn against him. Lerner, *supra*.

(II) <u>Venue in Virginia</u>

When jurisdiction is not based "solely" on "diversity", the proper venue is where the Defendants "reside" (presuming all in the same State), where a "substantial" part of the events took place or "any" district where any Defendant can be found, presuming none of the other options apply. 28 U.S.C. 1391 (b)(1)(2)(3). Here, applying any of these options, the obvious venue is the Eastern District of Virginia within the Fourth Circuit. That is because all the Defendants reside therein, as well as that being where the alleged events took place. E.g. Northern Virginia, which is within the Eastern District of Virginia. See Complaint, at paragraph 13 (disregarding where the Defendant "works" as being completely irrelevant, under the law).

---

[10] That case also addressed whether the amount in controversy exceeded $75,000.00, a requirement where jurisdiction is based upon diversity under 28 USC 1332. Bell, supra. This issue becomes relevant, here, if the Counts involving federal questions are dismissed, in which case there is a question of the sufficiency of allegations seeking relief for an amount "to be proven" at trial. See Complaint, throughout. LM Ins. Corp. v. Spaulding Enterprises Corp., 533 F.3rd 542 (7th Cir., 2008)(Wherein the Court, *in part*, affirmed a dismissal as to jurisdiction and addressed similar and unspecified requests for relief in a Fraud Count of damages "to be determined".). See also Edwards v. Marin Park, Inc., 356 F.3rd 1058 (9th Cir., 2004)(Addressing dismissal of suit if all claims involving federal questions were dismissed, leaving only state court claims) and Lerner v. Fleet Bank, N.A., 318 F.3d 113 (2nd Cir., 2003)(Then Judge Sotomayor, writing for the Court, in support of jurisdiction after dismissal of federal claims *but because of diversity of citizenship* as to the remaining state claims).

CONCLUSION

For all the aforementioned reasons, the Complaint should be dismissed and/or subject to Summary Judgment as outlined herein. To the degree that any portion of this case subject to federal court jurisdiction should survive this Motion, then any and all remaining issues should be transferred to the Eastern District of Virginia for further adjudication.

Respectfully Requested:

LAW OFFICES OF CHARLES F. CHESTER

BY: _____/s/_____
    Charles Frederick Chester Bar No. 17445
    51 Monroe Place, Suite 707
    Rockville, Maryland 20850
    (301) 294-2500
    Counsel to Defendants