IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

V.                                     Case No. 1:10-cr-93

ANN MARGRETH BAKILANA

Defendant

## SUPPLEMENTAL STATEMENT OF FACTS

COMES NOW the Defendant, via undersigned counsel, and in supplementation only of the agreed upon Statement of Facts, does hereby proffer the following:

1. By way of important background, S.K. has been a friend of the Defendant's family for over ten (10) years. The Defendant first met S.K. sometime in 2000 while S.K. was already living with the Defendant's parents who, together with the Defendant, were paying for her schooling and upkeep. At the time, S.K. had no job or place to live after the passing of her father, who was good friends with Ms. Bakilana's mother. S.K. also resided in the homes of both the Defendant's cousin as well as her brother, for whom she served as a bridesmaid when he married in 2008.

2. S.K. signed several contracts with the Defendant in her native tongue, Swahili, and thus, knew what the terms of her employment were suppose to be, including wages, and yet, both stayed with the Defendant during 2004-2006 in the United States and returned at her own request in 2009 after returning to Tanzania for the interim period of time. During that interim, S. K. stayed with the Defendant's family, *inter alia*, and finished some schooling. Throughout 2006-2008, the Defendant resided in the United States and did not have S.K.'s passport, which she obviously had in order to return to both Tanzania in 2006 and back to the United States in 2009.

1


EXHIBIT A

3. While S.K.'s contract had not yet been renewed after her return in 2009, the Defendant needed to urgently visit her ailing father in Tanzania and had agreed with S.K. to accompany her children during a stay en route with the children's aunt (who S.K. knows) in London. However, just four days before the trip, S.K. was refusing to stay with the children in London. Defendant admittedly panicked given the urgency of the trip. However, S. K. willingly went to the airport after agreeing to travel the entire way to Tanzania but, then, refused to board the plane.

4. During her stay in the United States, S.K. had her own room, set of house keys, cell phone paid for by Ms. Bakilana, a house phone, internet access, bank card, Wachovia check book and metro card. She went to church, shopping, classes at the Arlington Adult Learning Center paid for by Defendant, and classes at the Kumon Center for a GED degree. Ms. Bakilana assisted with homework and purchased GED practice books. S.K. was not required to do cooking, cleaning or laundry and her duties centered around child care. In fact, there was another domestic that came to do housecleaning and laundry; and Ms. Bakilana and her husband had 40 hours of leave during this six month time span during which they could be at home with children.

5. Thus, while the background for these charges does involve a circumvention of the minimum wage laws and Defendant should not have attempted to mislead the government about that, S.K. was not subject to the severe forms of abuse normally associated with human trafficking, which is what the government was investigating. In fact, S. K. wanted to be in the United States, requested several times to return, understood the terms of the contract she signed (including attending a World Bank orientation seminar about it) and voluntarily remained or returned to live with the Defendant, here.

Respectfully Submitted:

*[signature]*
Charles Frederick Chester
Co-Counsel to Defendant

*[signature]*
Thomas C. Carter
The Carter Law Firm, P.C.
526 King Street, Suite 213
Alexandria, VA. 22314
(703) 836-2000
Counsel to Defendant