IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOPHIA KIWANUKA, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:10-cv-01336-RBW |
| | ) |
| v. | ) |
| | ) |
| ANNE MARGRETH BAKILANA and | ) |
| RAYMOND D. RWEHUMBIZA, | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Julie M. Carpenter
Martina E. Vandenberg
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel:  (202) 639-6046
Fax:  (202) 639-6066

*Counsel for Plaintiff Sophia Kiwanuka*

## TABLE OF CONTENTS

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS ........................................................................................................................ i

TABLE OF CONTENTS ................................................................................................... i

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS ....................................................................................................................... 1

LEGAL STANDARDS ..................................................................................................... 3

STATEMENT OF FACTS ................................................................................................ 4

ARGUMENT ................................................................................................................... 6

I.      MS. KIWANUKA'S CLAIMS FOR INVOLUNTARY SERVITUDE, TRAFFICKING,
        AND FORCED LABOR ARE FULLY AND ADEQUATELY SUPPORTED BY THE
        ALLEGATIONS IN HER COMPLAINT AND THE UNDERLYING EVIDENCE ......... 6

II.     MS. KIWANUKA'S FAIR LABOR STANDARDS ACT CLAIM IS NEITHER TIME-
        BARRED NOR PRECLUDED BY THE PAYMENT OF RESTITUTION IN THE
        CRIMINAL CASE AGAINST DEFENDANT BAKILANA. ....................................... 10

        A.      The FLSA Statute of Limitations Was Equitably Tolled Until August
                2009 .............................................................................................................. 10

        B.      Defendant Bakilana's Payment of Restitution Pursuant to the Judgment in
                Her Criminal Case Does Not Preclude Ms. Kiwanuka from Seeking
                Additional Money Damages. ....................................................................... 15

III.    MS. KIWANUKA'S STATE LAW UNJUST ENRICHMENT CLAIM IS NEITHER
        TIME-BARRED NOR PRECLUDED BY THE PAYMENT OF RESTITUTION IN
        THE CRIMINAL CASE AGAINST DEFENDANT BAKILANA. ............................... 19

IV.     MS. KIWANUKA HAS ADEQUATELY ALLEGED MULTIPLE STATE TORT
        CLAIMS. ............................................................................................................... 20

        A.      Because The Applicable Statute of Limitations Was Tolled Until August
                2009 Ms. Kiwanuka's Tort Claims Are Not Time-Barred Under Virginia
                Law. ............................................................................................................. 20

        B.      Ms. Kiwanuka's Claims for Fraudulent Inducement and Fraud Permissibly
                Extend Back to Pre-2006 Acts. ................................................................... 24

        C.      Ms. Kiwanuka's Claims for Emotional Distress Are Not Time-Barred and
                Are Well-Pled. ............................................................................................ 25

V.      THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER MS. KIWANUKA'S
        STATE LAW CONTRACT CLAIMS AND THOSE CLAIMS ARE NEITHER TIME-
        BARRED NOR PRECLUDED BY CRIMINAL RESTITUTION PAID UNDER THE
        CRIMINAL CASE AGAINST DEFENDANT BAKILANA. .........................................27

VI.     MS. KIWANUKA HAS ADEQUATELY PLED HER INVOLUNTARY SERVITUDE,
        TRAFFICKING, FORCED LABOR, FLSA, UNJUST ENRICHMENT, AND
        NEGLIGENCE CLAIMS AGAINST MR. RWEHUMBIZA. .........................................29

VII.    VENUE IS PROPER IN THIS DISTRICT. .....................................................................31

CONCLUSION ...........................................................................................................................32

CERTIFICATE OF SERVICE ...................................................................................................33

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SOPHIA KIWANUKA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:10-cv-01336-RBW |
| | ) | |
| v. | ) | |
| | ) | |
| ANNE MARGRETH BAKILANA and | ) | |
| RAYMOND D. RWEHUMBIZA, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Sophia Kiwanuka ("Ms. Kiwanuka"), by undersigned counsel, respectfully opposes Defendants' Motion for Dismissal and/or Summary Judgment, ECF No. 8 ("Motion for Dismissal").

## INTRODUCTION

Defendant Anne Margreth Bakilana has already admitted to many of the allegations contained in Ms. Kiwanuka's Complaint.  In the context of the *criminal* prosecution brought against her in 2010, Defendant Bakilana admitted to fraud, flagrant and willful violations of the Fair Labor Standards Act, and to threatening Ms. Kiwanuka with deportation in an effort to coerce her continued labor.  Bakilana Statement of Facts ("Bakilana Statement") ¶¶ 9-15, at 3-6, Complaint, Att. B, ECF No. 1-2.  Defendant Bakilana pled guilty to two counts of false statements in the underlying criminal case. *United States v. Bakilana*, No. 1:10-cr-93 (E.D. Va.

Oct. 12, 2010), *available at* Plaintiff's Memorandum in Opposition to Defendants' Motion for Extension of Time to Answer Complaint, Att. G, ECF No. 7-7.

Defendant Rwehumbiza, Defendant Bakilana's husband, lived in their Virginia home, enjoyed Ms. Kiwanuka's uncompensated labor, and participated in holding her captive.  At all times, he acted "directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), qualifying him under federal law as an "employer."  When Ms. Kiwanuka appealed to him for help, he told her to accept her situation.  Complaint ¶ 27.

The well-pled facts alleged in the Complaint are fatal to the Defendants' misguided Motion for Dismissal.  This case involves not only admissions; not only allegations in a Complaint; but video and audio recordings of the crimes and torts alleged.   There are few cases *less* worthy of dismissal than this one.

Defendants' motion is, by their own admission, a hybrid between a motion to dismiss and a motion for summary judgment. Defs.' Memo. 1-4. None of Defendants' arguments come close to meeting their substantial burdens under either legal standard.  Most critically, the Defendants' argument that Ms. Kiwanuka has failed to state a claim simply ignores the clearly-stated allegation that the Defendants coerced her into involuntary servitude and forced labor by threatening to report her to federal law enforcement authorities for deportation if she did not submit to their control and command. Defendants' claim that Defendant Bakilana's payment of criminal restitution forecloses a private civil suit alleging a variety of damages is also flawed both legally and factually.  Finally, Defendants' arguments that Ms. Kiwanuka's claims are barred by the statute of limitations fail because Defendants' own actions served to toll those statutes from running until Ms. Kiwanuka was free of their control in August 2009.  In sum, Defendants have raised no arguments warranting dismissal or summary judgment.

2

## LEGAL STANDARDS

Defendants' motion appears to be primarily a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In deciding such a motion "a court 'constru[es] the complaint liberally in the plaintiff's favor,' 'accept[ing] as true all the factual allegations contained in the complaint,' 'with the benefit of all reasonable inferences derived from the facts alleged.'"  *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) (internal citations omitted; brackets in original).

To the extent that Defendants seek summary judgment, they bear the burden of demonstrating that no genuine dispute as to any material fact exists. However, it is impossible to say whether any such dispute may exist because Defendants have not filed a responsive pleading and have never admitted, denied, or challenged the specific, enumerated facts alleged in Ms. Kiwanuka's Complaint. Nor have they submitted affidavits or other supporting documentation that would create a record for this court to rely upon in assessing their motion. Defendants did attach a filing from the criminal case, but made no reference to that document in their arguments. Supplemental Statement of Facts. Defs.' Memo., Att. A, ECF No. 8-2.  That Statement is not competent to support summary judgment as it is not "made on personal knowledge" as required by Federal Rule of Civil Procedure 56(e)(1). Rather, it is signed by the attorneys who represented Defendant Bakilana during her criminal prosecution and not by any party with *personal* knowledge of the underlying relationship between Ms. Kiwanuka and the Defendants. *See* Supplemental Statement of Facts at 3.

Nevertheless, based on Defendants' claim that they are seeking summary judgment, Ms. Kiwanuka also offers additional evidence in support of several subsidiary points.  If the Court were to convert the motion to dismiss into a motion for summary judgment, it could grant that motion only if "there is no genuine issue of material fact and the moving party [*i.e.*, the

Defendants are] entitled to judgment as a matter of law." *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010).  When assessing a summary judgment motion, the record must be viewed "in the light most favorable to the non-moving party." *Id.*

## STATEMENT OF FACTS

In 2004 and again in 2009, Defendants Bakilana and Rwehumbiza lured Ms. Kiwanuka to the United States with promises of reasonable working conditions, educational opportunities, and decent pay. Complaint ¶¶ 1, 20, 55. Each time, upon Ms. Kiwanuka's arrival in the United States, Defendants confiscated Ms. Kiwanuka's passport, held her in isolation, and used threats of deportation to manipulate her into working long hours as a domestic servant and nanny to their children. Complaint ¶¶ 2, 3, 66, 67, 68.  Believing that if she stopped working for the Defendants she would be deported within twenty-four hours, Complaint ¶ 28, Ms. Kiwanuka worked seven days a week, without breaks to rest or eat, Complaint ¶¶ 3, 69, 70, and endured Defendant Bakilana's regular verbal and psychological abuse. Complaint ¶¶ 35, 36.

In July of 2009, the FBI launched an investigation into Defendants' employment and exploitation of Ms. Kiwanuka "in response to a tip of a possible human trafficking situation." Bakilana Statement ¶ 10, at 5. FBI officers provided Ms. Kiwanuka with a recording device, which she used to record her conversations with Defendant Bakilana. *Id.* ¶ 10, at 5. The recorded conversations captured "Ms. Bakilana warning S.K. [Ms. Kiwanuka] that she would be immediately escorted out of the country by the FBI" if she stopped working for Defendants. *Id.* ¶ 14, at 6.

When FBI agents and a federal prosecutor questioned Defendant Bakilana, she willfully and knowingly made false statements about Ms. Kiwanuka's pay and the threats of deportation she used to control Ms. Kiwanuka. Complaint ¶¶ 5,6. Defendant Bakilana pled guilty to two counts of false statements. In the statement of stipulated facts that Defendant Bakilana signed in

4

conjunction with her plea agreement, she admitted that Ms. Kiwanuka was "available for work for Ms. Bakilana seven days a week" and that Ms. Kiwanuka "worked more than 40 hours per week." Bakilana Statement  ¶ 8, at 3. Defendant Bakilana further admitted that she "developed a scheme to prey upon S.K.'s lack of sophistication about bank accounting to obtain S.K.'s labor at a rate far below the…legally required minimum wage." Bakilana Statement ¶ 9(b), at 3.

In their memorandum in support of their current motion, the Defendants offer a short recitation of "Facts as Alleged and/or Not in Genuine Dispute."  *See* Defendants' Memorandum in Support of Motion for Dismissal and /or Summary Judgment ("Defs.' Memo.") at 4, ECF No. 8-1.  However, several of these "facts" are indeed in dispute:

- Defendants assert that Ms. Kiwanuka "voluntarily entered into or renewed" employment contracts with Defendant Bakilana.  *Id.*  But Ms. Kiwanuka disputes that the contracts were "voluntary" insofar as she has alleged she was fraudulently induced to sign the contract documents and believed that she would be working for another family on her second trip to the United States.  Complaint ¶¶ 121-130.

- Defendants claim that all of Ms. Kiwanuka's losses were resolved by the criminal case. As explained more fully in the Argument section below, Ms. Kiwanuka disputes that claim.  It is in error, both as a matter of fact and as a matter of law.

- Defendants claim that the time periods they lay out for the various claims are undisputed, but this, too, is incorrect.  For example, Ms. Kiwanuka has alleged fraudulent inducement, and her allegations sufficiently cover both the period from 2004 to 2006 and the 2009 period.  In both instances, Defendant Bakilana intentionally misrepresented what Ms. Kiwanuka's living and working arrangements would be upon her arrival in the United States.  *See, e.g.*, *id.* ¶ 20 (misrepresenting educational opportunities in 2004); *id.*

¶ 54 (misrepresenting the identity of Ms. Kiwanuka's employer in 2009); *id.* ¶ 55 (misrepresenting educational opportunities in 2009). All of these individual factual allegations are incorporated into the fraudulent inducement claim by reference. *Id.* ¶ 121.

## ARGUMENT

**I.    MS. KIWANUKA'S CLAIMS FOR INVOLUNTARY SERVITUDE, TRAFFICKING, AND FORCED LABOR ARE FULLY AND ADEQUATELY SUPPORTED BY THE ALLEGATIONS IN HER COMPLAINT AND THE UNDERLYING EVIDENCE.**

In her Complaint, Ms. Kiwanuka alleges that the Defendants subjected her to involuntary servitude in violation of the Thirteenth Amendment and 18 U.S.C. § 1584; trafficked her into the United States for the purpose of subjecting her to involuntary servitude in violation of 18 U.S.C. § 1590; and subjected her to forced labor in violation of 18 U.S.C. § 1589. Complaint ¶¶ 83-98. The Defendants respond that Ms. Kiwanuka's allegations are insufficient "as a matter of law" to support any claims for involuntary servitude. Defs.' Memo. at 6. The Defendants, however, have misconstrued Ms. Kiwanuka's allegations and the controlling law. Most important, Defendants ignore that Defendant Bakilana has already admitted she committed many of these acts. Indeed, she has pled guilty in a federal criminal case stemming from the same events.

The Defendants suggest that the Complaint alleges nothing more than that Defendant Bakilana occasionally yelled at Ms. Kiwanuka. Defendants contend that such psychological coercion falls short of the "use or threatened use of physical or legal coercion" required by *United States v. Kozminski*, 487 U.S. 931, 948, 108 S. Ct. 2751, 2763 (1988). Defs.' Memo. at 6-8. This argument fails for three reasons. *First*, Defendants have overlooked the numerous times Ms. Kiwanuka asserted in her Complaint that the Defendants abused the legal process by threatening her with deportation should she fail to conform to their wishes and perform the chores and tasks demanded of her. *See* Complaint ¶¶ 2, 28, 34, 67, 79.

*Second*, *Kozminski* itself recognizes that such threats amount to "legal coercion" sufficient to state a claim for involuntary servitude:   "[I]t is possible that threatening an incompetent with institutionalization or an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude . . . ."   *Kozminski*, 487 U.S. at 948, 108 S. Ct. at 2762.   *See also United States v. Alzanki*, 54 F.3d 994, 1004-05 (1st Cir. 1995) (determining that a victim could have reasonably believed threats of deportation and been induced thereby to remain in service to defendants); *Kimes v. United States*, 939 F.2d 776, 777-78 (9th Cir. 1991) (upholding convictions for involuntary servitude based in part on "threats of deportation").

*Third*, *Kozminski* is no longer controlling, since Congress has specifically addressed the *Kozminski* decision and rejected it as too narrow.   In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464.   Rejecting *Kozminski*'s restrictions, Congress determined that "[i]nvoluntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through *nonviolent* coercion."   *Id.* § 102(b)(13) (emphasis added).

Indeed, Congress added 18 U.S.C. §§ 1589 and 1590 precisely "to address the increasingly subtle methods of traffickers who place their victims in modern day slavery" and "to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude *as defined in Kozminski.*"   H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.) (emphasis added).

In short, *Kozminski*'s restrictions are of no moment in construing the current statutory definition of involuntary servitude.   "Involuntary servitude" is now defined as follows:

> The term "involuntary servitude" includes a condition of servitude induced by means of—
>
> (A)   any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint, or

7

(B)      the abuse or threatened abuse of the legal process.

TVPA § 103(5).[1]  The conference report accompanying the TVPA makes clear that "serious harm" includes "banishment, starvation, or bankruptcy," H.R. Rep. No. 106-939, at 101. It is not limited to violent or physical harm.

In addition, the current definition continues to recognize "the abuse or threatened abuse of the legal process" as a means to induce involuntary servitude.  *See* TVPA § 103(5)(B).  Not surprisingly, courts regularly determine that threats of deportation satisfy this element of the offense.  For example, where "[p]laintiffs allege that their employers used the threat of deportation to force continued labor. . . . there is sufficient evidence for a prima facie showing of Involuntary Servitude." *Garcia v. Audubon Communities Mgmt. LLC*, Civ. A. No. 08-1291, 2008 WL 1774584, at *3 (E.D. La. April 15, 2008); *see also United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008) (observing that "vague warnings" and "false statements" about deportation that "could reasonably be viewed as a scheme to make [the victim] believe that she or her family would be harmed if she tried to leave" were "all the jury needed to convict")[2]; *Ramos v. Hoyle*, No. 08-21809-CIV, 2008 WL 5381821, at *4 (S.D. Fla. Dec. 19, 2008) (holding that even truthful claims regarding deportation can constitute "abuse or threatened abuse of law or the legal process"); *United States v. Garcia*, No. 02-CR-110S-01, 2003 WL 22956917, at *4 (W.D.N.Y. Dec. 2, 2003) (holding that threats of deportation "clearly fall within the concept and

---

[1]    The TVPA provision on forced labor, codified at 18 U.S.C. § 1589, adopts a similar definition.  In particular, it includes "the abuse or threatened abuse of law or the legal process" as a basis for a claim of forced labor.  18 U.S.C. § 1589(a)(3).

[2]    The *Calimlim* case is an example of a criminal trafficking conviction where a criminal restitution order was followed by a civil trafficking case for additional damages.  *See Irma Martinez v. Jefferson N. Calimlim, et al.*, No. 08-cv-00810, 2009 WL 2705887 (E.D. Wis. August 26, 2009).

definition of 'abuse of legal process' since the alleged objective for same was to intimidate and coerce the workers into 'forced labor.'").

Finally, not only has Ms. Kiwanuka clearly and plainly alleged that the Defendants routinely threatened her with deportation if she attempted to leave their employment or control, but the evidence incontrovertibly supports these allegations.  As part of an investigation into the Defendants' trafficking of Ms. Kiwanuka, the FBI obtained recordings of Defendant Bakilana making just such a threat.  As alleged in the Complaint, Defendant Bakilana is recorded saying, "They will take you right now to board a night plane for your return.  Okay?  I can make a phone call to the FBI, they will bring you your passport on Monday.  Monday night you will board a plane because your visa would have been cancelled.  Choose."  Complaint ¶ 79.  Moreover, Defendant Bakilana has acknowledged that she "in fact did make such threats to call the FBI to escort [Ms. Kiwanuka] out of the country if [Ms. Kiwanuka] followed through on her decision to terminate her employment."  Bakilana Statement ¶ 17(c), at 8.

The Defendants note that when reviewing the sufficiency of a complaint, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Defs.' Memo. at 2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).  Ms. Kiwanuka's allegations not only rise above mere speculation, they are unchallenged and incontrovertible. They have been the subject of a criminal investigation and prosecution.

In considering the Defendants' motion, this court must construe Ms. Kiwanuka's factual allegations as true and allow her all reasonable inferences arising therefrom.  *Aktieselskabet*, 525 F.3d at 15.   In her Complaint, Ms. Kiwanuka has provided detailed descriptions of her forced labor and condition of servitude, Complaint ¶¶ 26-33, 63-75. She has alleged threatened abuse of the legal process—in particular, threatened involvement of the FBI and deportation, Complaint

¶¶ 2, 28, 34, 67, 79—sufficient to establish involuntary servitude.  As such, her Complaint is well-pled under 18 U.S.C. §§ 1584, 1589, and 1590.  In fact, her Complaint is well-pled even under the more restrictive standards of *Kozminski*. *See* 487 U.S. at 948, 108 S. Ct. at 2762 (acknowledging that a threat of deportation could "induce[] involuntary servitude").  She has made these allegations with respect to *both* Defendants and, therefore, the Defendants' motion to dismiss with respect to these claims should  be denied with prejudice.

## II.    MS. KIWANUKA'S FAIR LABOR STANDARDS ACT CLAIM IS NEITHER TIME-BARRED NOR PRECLUDED BY THE PAYMENT OF RESTITUTION IN THE CRIMINAL CASE AGAINST DEFENDANT BAKILANA.

Ms. Kiwanuka has raised a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, asserting that the Defendants failed to pay her the statutorily required minimum wage during her periods of employment.  In response, the Defendants raise two principal arguments[3]:  (1) that any claim pre-dating 2007 is time-barred by the FLSA's statute of limitations; and (2) that a restitution judgment against Defendant Bakilana prevents Ms. Kiwanuka from seeking additional damages.  Both arguments are wholly without merit.

### A.    The FLSA Statute of Limitations Was Equitably Tolled Until August 2009.

The Defendants correctly note that under 29 U.S.C. § 255(a) actions brought pursuant to the FLSA must be commenced "within two years after the cause of action has accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action has accrued."

---

[3]    Defendants raise a third argument that Ms. Kiwanuka is not entitled to overtime payments.  Defs.' Memo. at 11-12.  Ms. Kiwanuka concedes that, in accordance with 29 U.S.C. § 213(b)(21), she is not entitled to overtime payment at one-and-a-half times her normal hourly rate.  However, she is nevertheless entitled to payment for all hours worked, including all those in excess of a forty-hour work week.  The exemption in § 213(b)(21) "does not excuse the employer from paying the live-in worker at the applicable minimum wage rate for all hours worked."  29 C.F.R. § 552.102(a).  In calculating the restitution payment, the Department of Labor calculated that Ms. Kiwanuka worked twenty-four hours each day. Narrative Report, U.S. Dep't of Labor, Jan. 29, 2010 (Exhibit A).

A FLSA violation is willful—and therefore subject to the longer, three-year limitations period—if the employer knew or showed reckless disregard for whether his or her conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681 (1988). In this case, Defendant Bakilana admits that she "signed a World Bank Group Code of Conduct document regarding her employment of a G-5 visa holder [*i.e.*, Ms. Kiwanuka], advising that she would comply with the provisions of federal, state, and local laws applicable to the employment of a G-5 domestic employee in the United States." *See* Bakilana Statement ¶ 5, at 2. Furthermore, Defendant Bakilana has admitted that she failed to pay Ms. Kiwanuka "knowingly and willfully, and with fraudulent intent, and not because of accident, mistake, or other innocent reason." *Id.* ¶ 19, at 8.

Ms. Kiwanuka filed her Complaint on August 9, 2010. Defendants argue that even under the three-year limitations period, any cause of action accruing prior to August 9, 2007, is therefore time-barred. However, it is well-established that the equitable tolling doctrine is read into every federal statute of limitations. *See, e.g.*, *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir. 1977).

Courts have had no difficulty determining that the FLSA statute of limitations had been tolled under circumstances factually similar to the present case. In *Deressa v. Gobena*, No. 1:05-CV-1334 (JCC), 2006 WL 335629 (E.D. Va. Feb. 13, 2006), the plaintiff—an Ethiopian national—claimed the defendants had trafficked her, held her as a "virtual prisoner" by withholding her passport, and threatened her with deportation when she inquired about her pay. The plaintiff alleged the defendants had misled her about the nature and timing of her pay, thereby inducing her to let the limitations period elapse. The court determined these allegations were sufficient to toll the statute of limitations. *Id.* at *3.

The facts of Ms. Kiwanuka's case are strikingly similar.  She, too, has alleged that the Defendants trafficked her for the purpose of holding her in forced labor and that she was controlled and manipulated by Defendants' actions, including their confiscation of her passport and threats of deportation.  Moreover, Defendant Bakilana has admitted that she "developed a scheme to prey upon S.K.'s lack of sophistication about bank accounting to obtain S.K.'s labor at a rate far below the contractually and/or legally required minimum wage rate."  Bakilana Statement ¶ 9(b), at 3.[4]

Moreover, Ms. Kiwanuka alleges that as early as 2005 Defendant Bakilana intentionally exploited Ms. Kiwanuka's limited English proficiency, purposefully mis-translating and withholding critical information regarding domestic workers' legal rights during a World Bank workshop on the rights of domestic servants employed by World Bank personnel.  Complaint ¶ 28.

Other courts have noted that U.S. Department of Labor regulations require employers to post notice of employee rights under the FLSA.  *See* 29 C.F.R. § 516.4.  Numerous cases have held that failure to post such notice automatically tolls the FLSA statute of limitations.  *See, e.g.*, *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 387 (E.D.N.Y. 2010) ("The failure to post such notices advising employees of the right to earn minimum wage . . . equitably tolls the statute of limitations until an employee has actual notice of his or her rights under the FLSA."); *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 697-98 (D. Conn. 2008) (collecting cases).

---

[4] Defendant Bakilana's statement of facts relates to the 2009 period; however, Ms. Kiwanuka has alleged an identical scheme existed during the 2004-2006 period, Complaint ¶¶ 42-46.  While evaluating the Defendants' motion to dismiss, Ms. Kiwanuka's allegations must be taken as true, and she is entitled to all reasonable inferences in her favor—including the inference that Ms. Kiwanuka's lack of sophistication and susceptibility to such schemes was as great in the 2004-2006 period as in the 2009 period and that the Defendants acted with deceptive intent in both periods.  *See Aktieselskabet*, 525 F.3d at 15.

This posting requirement has been addressed within the specific context of trafficking domestic servants.  In *United States v. Sabhnani*, 566 F. Supp. 2d 139 (E.D.N.Y. 2008), *vacated in part on other grounds, aff'd in part*, 599 F.3d 215 (2d Cir. 2010), *cert. denied*, 79 U.S.L.W. 3246 (U.S. Oct. 8, 2010) (No. 10-476),[5] the defendants were charged with coercing the forced labor of two Indonesian domestic servants.  The court specifically noted prior case law tolling the statute of limitations in the absence of a posted Department of Labor advisory.  *Id.* at 145.  It further determined that "[i]n the present case, not only was there no notice, but the women could not speak English.  They were completely unaware of the FLSA or any of its minimum wage or overtime provisions.  There is no question that in the present case, there was equitable tolling of the statute of limitations."  *Id.* at 146.  Ms. Kiwanuka's situation is even more alarming.  Not only did the Defendants not post the required notice or otherwise apprise her of her FLSA rights, but they also actively deceived her as to her rights and preyed upon her relative lack of sophistication to confuse and mislead her.[6]

Further, it would be perverse to suggest that Ms. Kiwanuka, while she was held in forced labor, manipulated, and controlled by the Defendants, nevertheless should have—or even could have—initiated legal proceedings to vindicate her rights.  The Defendants took affirmative steps to prevent her from doing so. The Defendants kept Ms. Kiwanuka in isolation, confiscating her

---

[5]  While the Defendants rely on the Second Circuit's review of *Sabhnani* for the proposition that Ms. Kiwanuka is not entitled to overtime pay, Defs.' Memo. at 12, they neglect to acknowledge the district court's unchallenged holding in the same case that the statute of limitations had been tolled and that the regular minimum wage was required for all hours worked.

[6]  Thus, even if this Court were to adopt the minority position that failure to post adequate notice of FLSA rights does not automatically toll the statute of limitations, *see, e.g.*, *Antenor v. D & S Farms*, 39 F. Supp. 2d 1372, 1380 (S.D. Fla. 1999); *Archer v. Sullivan County*, No. 95-5214, 1997 WL 720406, at *3-4 (6th Cir. Nov. 14, 1997), the active fraud and deception in Ms. Kiwanuka's case easily distinguishes her situation and brings it within the equitable tolling doctrine. *See Ramirez v. Rifkin*, 568 F. Supp.2d 262, 270 (E.D.N.Y. 2008) (determining that the FLSA statute of limitations had been tolled because a domestic servant's employers' conduct reflected "a conscious attempt to conceal" her "legal rights under the law").

identity documents and passport, threatening her with deportation, and forcing her to remain completely dependent upon them.   Where a party's own actions have induced another into inaction or otherwise prevented her from ascertaining her rights or asserting a claim, the party at fault may not take shelter behind a statute of limitations:

> To decide the case, we need look no further than the maxim that no man may take advantage of his own wrong.  Deeply rooted in our jurisprudence, this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed *to bar inequitable reliance on statutes of limitations.*

*Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-33, 79 S. Ct. 760, 762 (1959) (emphasis added; footnotes omitted); *see also Ott v. Midland Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (applying *Glus* to 29 U.S.C. § 255).

Finally, the statute of limitations was likewise tolled during Ms. Kiwanuka's interim stay in Tanzania from 2006-2009.  Even during this period, Defendants also took affirmative steps to prevent Ms. Kiwanuka from returning to the United States to take legal action.   Defendant Bakilana's family held Ms. Kiwanuka's passport and other belongings while Ms. Kiwanuka was in Tanzania.   Complaint ¶ 52.   Defendant Bakilana has admitted that her family maintained control over Ms. Kiwanuka's passport during this period.  Bakilana Statement ¶ 6, at 2.

Moreover, as long as Ms. Kiwanuka remained in Tanzania, she had no means of vindicating her legal rights in the United States. Ms. Kiwanuka was beholden to the Defendants and their relatives, who belong to powerful, wealthy, and well-connected Tanzanian families. Complaint ¶¶ 17-18. Ms. Kiwanuka, the daughter of a struggling, disadvantaged family, living in a remote village in Tanzania, Complaint ¶ 14, was incapable of pursuing any legal action in the United States, even if Defendants had not misled her about her legal rights. While in Tanzania, she had no opportunity to contact a lawyer capable of filing an action in the United States.  And,

by holding her passport and personal items hostage, Defendants and their agents in Tanzania guaranteed that she would be unable to pursue justice.

In fact, Ms. Kiwanuka did not understand her rights and lacked any capacity to seek legal redress until after the FBI first contacted her in July 2009 and subsequently freed her from the Defendants' control in August 2009.  Only at that time did the limitations period of 29 U.S.C. § 255(a) begin to run.

In assessing the Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe Ms. Kiwanuka's allegations liberally, accept all factual assertions as true, and permit Ms. Kiwanuka the benefit of all reasonable inferences. Under that standard, Ms. Kiwanuka has more than adequately demonstrated (1) that at all times prior to her first contact and cooperation with the FBI in July 2009 she was actually ignorant of her rights under the FLSA, (2) that her ignorance was engineered and maintained by the Defendants' affirmative actions, (3) that the Defendants' threats, manipulation, and deceit prevented her from bringing a claim even had she known of her rights, and (4) that her ability and capacity to bring suit remained impaired during her 2006-2009 stay in Tanzania.  The statute of limitations therefore began running in August 2009, and Ms. Kiwanuka's Complaint, filed just over a year later in August 2010, is timely.[7]

B.      **Defendant Bakilana's Payment of Restitution Pursuant to the Judgment in Her Criminal Case Does Not Preclude Ms. Kiwanuka from Seeking Additional Money Damages.**

The Defendants argue that Defendant Bakilana's payment of $41,626.80 as restitution in her criminal matter somehow prevents Ms. Kiwanuka from pursuing her private civil claims.  In fact, because this payment represented Ms. Kiwanuka's "lost income" for the 2009 period, *see*

---

[7]   Whether the statute of limitations was tolled is irrelevant to Ms. Kiwanuka's trafficking and forced labor claims. The statute of limitation for those claims is ten years. 18 U.S.C. § 1595(c).

18 U.S.C. § 3663(b)(4), it constitutes an admission that Defendant Bakilana paid Ms. Kiwanuka less than minimum wage in violation of the FLSA.  Ms. Kiwanuka has always been completely transparent with this Court about the restitution payments. *See, e.g.*, Complaint ¶ 8.  But, the restitution payment from a criminal proceeding in no way absolves the Defendants of all civil liability. Nor is Ms. Kiwanuka bound by a criminal judgment to which she was not a party.

In advancing their argument, the Defendants rely on *United States v. Coleman*, 997 F.2d 1101 (5th Cir. 1993).  However, that case is completely inapposite for multiple reasons.

- *First*, and most importantly, in *Coleman*, the Government was a party to both the civil settlement and to the later criminal proceedings:  "In this case, the same parties were involved in both criminal and civil proceedings." *Id.* at 1107.  Ms. Kiwanuka, however, was *not* a party to the criminal matter prosecuted against Defendant Bakilana *nor* was she a party to the plea agreement reached with Defendant Bakilana.

- *Second*, the civil settlement in *Coleman*, to which the Government was a party, "settle[d] fully and finally all differences between [the parties], relating to all claims and demands which are based in whole or in part upon the facts alleged in the FDIC case . . . ." *Id.*  Ms. Kiwanuka has never negotiated or agreed to a release of claims against the Defendants.

- *Third*, that case concerned the effect of a prior civil settlement on a subsequent criminal restitution order. *Id.* at 1106.  The sequence here is reversed:  the government obtained a criminal restitution judgment in the first instance, and the question is what effect it may have on Ms. Kiwanuka's ability to seek civil damages.

Because Ms. Kiwanuka was not a party to the criminal plea agreement or restitution order, she cannot be bound by it.  Defendant Bakilana, however, is bound by the rulings of the criminal court, and that very court has already rejected the arguments she makes here:

> The defendant [Ms. Bakilana] is incorrect in her contention that the restitution imposed in the Plea Agreement foreclosed all future civil litigation by S.K.  The Plea Agreement does not contain any language addressing potential civil lawsuits, nor did the government make any promises or assurances in the language of the agreement itself that the defendant would be immunized from civil suits by S.K. or others.

Memorandum Opinion at 7, *United States v. Bakilana*, No. 1:10-cr-93 (E.D. Va. Oct. 12, 2010),

*available at* Plaintiff's Memorandum in Opposition to Defendants' Motion for Extension of

Time to Answer Complaint, Att. G, ECF No. 7-7.  As the court further noted, "it is unclear how

the government would have the authority in this criminal case to take any action precluding civil

litigation by a private individual, such as the victim, *who was not a party to the Plea*

*Agreement*."  *Id.* at 8 n.3 (emphasis added).

Furthermore, federal law precludes Defendants' argument here that criminal restitution

payments bar a civil claim. "Any amount paid to a victim under an order of restitution shall be

reduced by any amount later recovered as compensatory damages for the same loss by the victim

in—(A) any Federal civil proceeding . . . ."  18 U.S.C. § 3664(j)(2).  Clearly, an order of

restitution does not preclude subsequent civil suits.  At most, it may offset any future recovery of

compensatory damages for the same loss.

In this case, the $41,626.80 restitution payment covers the value of Ms. Kiwanuka's

services—as calculated by the Department of Labor and measured at the prevailing, fair-market

rate—for the period from January 18, 2009, through August 1, 2009, exclusive of the $300

monthly payments the Defendants provided to Ms. Kiwanuka.  *See* Narrative Report, U.S. Dep't

of Labor, Jan. 29, 2010 (Exhibit A).  Thus, the payment of restitution did not reflect any of Ms.

Kiwanuka's damages for intentional or negligent infliction of emotional distress; it did not

reflect damages for trafficking; it did not reflect damages for negligence; it did not reflect

damages for fraud and fraudulent inducement; it did not reflect the liquidated damages permitted

under the FLSA, *see* 29 U.S.C. § 216(b); it did not reflect any punitive damages; and, last but not

least, it did not reflect any damages whatsoever—physical, economic, or emotional—from the 2004-2006 period.[8]

Thus, to the extent that Ms. Kiwanuka prevails on her economic claims for the 2009 period, the criminal restitution order may provide a partial set-off against her award. However, Ms. Kiwanuka has adequately alleged multiple bases for damages covering various time periods, the majority of which are not reflected in the criminal restitution order and are not eligible for set-off or reduction. Taking Ms. Kiwanuka's allegations as true and accepting all reasonable inferences in her favor, there is simply no basis to dismiss Ms. Kiwanuka's civil claims here just because Defendant Bakilana was forced to pay back wages.

Nor is there any basis for summary judgment on those grounds. The Defendants have presented no *evidence* relevant to assessing the losses covered by the criminal restitution payment. Rather, they merely assert that the restitution payment "exceeds the claim(s)." Defs.' Memo. at 10; *see also id.* at 16. By contrast, the Department of Labor report provided by Ms. Kiwanuka convincingly demonstrates that the restitution falls far short of compensating her for the totality of her alleged losses and at best represents a potential set-off against her claims.[9]

---

[8]  The Defendants casually assert that "[t]he Court can see from the Complaint itself that the [restitution] payment acknowledged by all parties exceeds the claim(s)." Defs.' Memo. at 10; *see also id.* at 16. However, the Defendants have either misapprehended Ms. Kiwanuka's complaint or are misrepresenting it. Defendants' calculations are based on standard forty-hour work weeks and mysteriously omit the sixteen-month period from April 2004 through July 2005. *Id.* at 10; *see also id.* at 16. Yet Ms. Kiwanuka has clearly alleged that she was forced to work well more than forty hours per week. She worked essentially twenty-four hours per day, seven days a week from April 2004 until July 2006 and again from January 2009 through August 2009. Complaint ¶¶ 29-31, 68-70. The Department of Labor corroborated Ms. Kiwanuka's assessment of the hours she worked per week. *See* Narrative Report, U.S. Dep't of Labor, Jan. 29, 2010 (Exhibit A) ("[T]he back wage computations for this 'V' [victim] followed the scheduled seven (7) days , 24 hours per day . . . ."). In any event, Ms. Kiwanuka's claims reach well beyond the minimal economic loss tabulated by the Defendants.

[9]  Defendant Bakilana paid restitution pursuant to 18 U.S.C. § 3663(b)(4). *See* Complaint ¶¶ 7,8. Such restitution payments reimburse the victim only for "lost income" and "other expenses related to participation in the investigation or prosecution." 18 U.S.C. § 3663(b)(4).

Construing this record in the light most favorable to Ms. Kiwanuka, it is obvious the Defendants are not entitled to summary judgment.

### III.   MS. KIWANUKA'S STATE LAW UNJUST ENRICHMENT CLAIM IS NEITHER TIME-BARRED NOR PRECLUDED BY THE PAYMENT OF RESTITUTION IN THE CRIMINAL CASE AGAINST DEFENDANT BAKILANA.

Ms. Kiwanuka has alleged the Defendants were unjustly enriched insofar as they accepted Ms. Kiwanuka's services but failed to compensate her adequately.  For purposes of their discussion, the Defendants have conflated this claim with the FLSA claims.  Defs.' Memo. at 8.  The presentation is somewhat confusing, since two of their arguments with respect to the FLSA—those regarding 29 U.S.C. § 255(a), *see* Defs.' Memo. at 10-11, and regarding overtime compensation, *see id.* at 11-12—are based on federal statutory provisions that have no bearing on Ms. Kiwanuka's supplemental state common law claim for unjust enrichment.

The Defendants' suggestion that the unjust enrichment claim is barred by the criminal restitution order is without merit for the reasons stated immediately above, *supra* Part II.B.  In particular, the restitution judgment represents a *minimum* estimate of Ms. Kiwanuka's economic losses for 2009 and, therefore, at best provides a partial set-off to her claims.[10]  Furthermore, the restitution order does not cover any claims for 2004-2006, and Ms. Kiwanuka's unjust enrichment claim clearly covers that period.  Complaint ¶ 104 (realleging and incorporating all prior allegations, including those respecting 2004-2006).

The Defendants raise only a statute of limitations argument with respect to unjust enrichment. That argument appears to be based on 29 U.S.C. § 255(a).  *See, e.g.*, Defs.' Memo. at 10 ("[T]o the extent that the Plaintiff is permitted to proceed with *these Counts* [evidently

---

[10]  An employer who seeks a domestic servant to work twenty-four hours per day, seven days a week, without holidays, vacations, or sick time, *see, e.g.*, Complaint ¶¶ 29-31, 68-70, will almost certainly have to pay a significant premium above the prevailing wage charged for standard domestic services. It is reasonable to infer, therefore, that Ms. Kiwanuka's true economic loss exceeds her contractual hourly wage multiplied by the number of hours she worked.

referring to the FLSA and unjust enrichment claims], she cannot do so for monies owed over two (2) years before she filed suit."). Obviously, the federal statute does not control the common law claim for unjust enrichment. The statute of limitations periods is two years under Virginia law, Va. Code Ann. § 8.01-248, and three years under D.C. law, D.C. Code § 12-301(8). However, insofar as the Defendants' memorandum can be understood to apply Virginia's or the District of Columbia's statute of limitations to all of Ms. Kiwanuka's state law claims, *see* Defs.' Memo. at 12, Ms. Kiwanuka directs the Court's attention to her discussion of those issues below, *infra* Part IV.A.

## IV.   MS. KIWANUKA HAS ADEQUATELY ALLEGED MULTIPLE STATE TORT CLAIMS.

Ms. Kiwanuka has alleged a variety of common law tort claims, including negligent and intentional infliction of emotional distress, negligence, fraudulent inducement, and fraud. The Defendants seek to dismiss these claims, arguing they are time-barred by the Virginia statute of limitations and that the emotional distress claims are inadequate or require a more definite statement. Defs.' Memo. at 12-15.

### A.   Because The Applicable Statute of Limitations Was Tolled Until August 2009 Ms. Kiwanuka's Tort Claims Are Not Time-Barred Under Virginia Law.

Defendants first argue that since the actions forming the basis of Ms. Kiwanuka's Complaint occurred in Virginia, that state's statute of limitations should apply. *Id.* at 12. Under Virginia law, claims for personal injury and those resulting from fraud "shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243. However, the Defendants neglect to mention that Virginia law resets the statute of limitations period in certain cases involving criminal prosecutions:

> If a criminal prosecution is commenced and . . . a grand jury indictment is waived after the period within which a civil action arising out of the same set of facts may be brought, a civil action

> may be brought within one year of the date of the final judgment or
> order in the trial court . . . but no more than ten years after the date
> of the crime or two years after the cause of action shall have
> accrued under § 8.01-249, whichever date occurs last.

Va. Code Ann. § 8.01-229(K).  Here, Defendant Bakilana waived indictment in her criminal

proceeding on March 29, 2010.  Waiver of Indictment, *United States v. Bakilana*, No. 1:10-cr-93

(E.D. Va. Mar. 29, 2010) (Exhibit B).  Because the criminal proceeding and this civil suit arise

from the same set of facts,[11] it makes no difference whether the statute of limitations had run.

Where an indictment is waived "*after the period within which a civil action arising out of the*

*same set of facts may be brought*," § 8.01-229(K) (emphasis added), a civil plaintiff is

nevertheless entitled to bring her claims "within one year of the date of the final judgment." *Id.*

The statute of limitations period is thus effectively reset and allowed to run another year.

Here, the final judgment in Defendant Bakilana's case was entered on July 2, 2010.

Judgment in a Criminal Case, *United States v. Bakilana*, No. 1:10-cr-93 (E.D. Va. July 2, 2010),

*available at* Plaintiff's Memorandum in Opposition to Defendants' Motion for Extension of

Time to Answer Complaint, Att. A, No. ECF 7-1.  Ms. Kiwanuka's complaint was filed on

August 9, 2010, well within the renewed one-year limitations period.[12]  Thus, with respect to

Defendant Bakilana, all of Ms. Kiwanuka's state law claims are timely filed.[13]

---

[11]  The false statements Defendant Bakilana made to the FBI related to events that occurred as far back as 2004. "When asked by the FBI whether she *ever* threatened to call the FBI to escort [Ms. Kiwanuka] out of the country if [Ms. Kiwanuka] followed through with her decision to terminate her employment, Ms. Bakilana stated she did not." Bakilana Statement ¶ 17(b), at 8 (emphasis added). Ms. Kiwanuka alleges that Defendant Bakilana made such threats regularly, beginning in 2004. *See, e.g.*, Complaint ¶ 34.

[12]  The final clause of the subsection, limiting the renewed period to the later of ten years after the crime or two years after accrual, has no effect on this case since Ms. Kiwanuka's Complaint was clearly filed within ten years of the crime.

[13]  Insofar as the introduction of these documents from Defendant Bakilana's criminal trial requires that the Court review this portion of the Defendants' motion as a motion for summary judgment, Ms. Kiwanuka notes that the Defendants have offered *no evidence whatsoever* competent to rebut these

Moreover, with respect to both Defendant Bakilana and Defendant Rwehumbiza, Virginia law allows for the tolling of the limitations period "[w]hen the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action." Va. Code Ann. § 8.01-229(D). Ms. Kiwanuka has already exhaustively detailed the Defendants' direct and indirect means to prevent and dissuade her from filing suit. *See supra* Part II.A.

Under facts similar to Ms. Kiwanuka's, courts applying Virginia law have held the statute of limitations tolled. *Deressa v. Gobena*, No. 1:05-CV-1334 (JCC), 2006 WL 335629 (E.D. Va. Feb. 13, 2006), discussed above, *supra* Part II.A, determined that defendants' misleading statements regarding a trafficking victim's pay, coupled with their threats of deportation and attempts to limit the victim's movements and outside relationships, were enough to toll Virginia's limitations period. *Id.* at *4. Ms. Kiwanuka has made similar allegations. Complaint ¶¶ 42-46 (misleading statements regarding pay); *id.* ¶¶ 2, 28, 34, 67, 79 (deportation); *id.* ¶¶ 31, 48, 71-72 (interference with movements and relationships). The reasoning of *Deressa* therefore applies to toll the statute of limitations in Ms. Kiwanuka's case—with respect to both the Defendants—until she was finally free from the Defendants' control and able to assert her legal rights.[14] That occurred in August 2009, and she timely filed suit one year later.

---

documents or Plaintiff's analysis. When this record is viewed in the light most favorable to Ms. Kiwanuka, the Defendants cannot establish their entitlement to summary judgment.

[14] As discussed *supra* Part II.A, the statute of limitations was tolled during Ms. Kiwanuka's stay in Tanzania from 2006-2009. While she was in Tanzania, Ms. Kiwanuka had no reasonable means of vindicating her rights in the United States. She did not have access to her passport, Complaint ¶ 52. And, as the daughter of a disadvantaged family living in a small, rural village, she had no ability to contact and retain a lawyer in the United States. Moreover, because Defendants belong to powerful and well-connected Tanzanian families, Complaint ¶¶ 17-18, Ms. Kiwanuka had reason to worry that she or her family might be subject to violence or arbitrary imprisonment if she even ventured to discuss her experiences in the United States.

1.      Ms. Kiwanuka's Tort Claims Are Not Time-Barred Under D.C. Law.

Ms. Kiwanuka accepts the Defendants' assertion that Virginia's statute of limitations governs the present tort claims, and she further contends that any later attempt by the Defendants to assert a different jurisdiction's statute of limitations is waived by Defendants' original choice of Virginia law.  *Cf. CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482 (D.C. Cir. 1996) (acknowledging that a court could determine a party waived a choice-of-law argument and doubting "that such a determination could be thought an abuse of discretion").

Nevertheless, Ms. Kiwanuka is aware that when federal courts decide supplemental state law claims, they typically apply "the choice-of-law principles of the forum jurisdiction, which in this case is the District of Columbia."  *Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003).   "Because the District of Columbia choice-of-law rules treat statutes of limitations as procedural, the rules require application of the District of Columbia statute of limitations."  *Id.*  Should this Court therefore choose to apply the District of Columbia statute of limitations—despite the parties' evident preference to proceed under Virginia rules—Ms. Kiwanuka offers the following points.

Under District of Columbia law, plaintiffs must bring their tort claims with three years from the time of accrual of the action.  D.C. Code § 12-301(8).  However, it is a "well-settled principle" under District of Columbia law that a defendant may not avail himself or herself of "the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run."  *Hornblower v. George Washington Univ.*, 31 App. D.C. 64, 75 (1908).  The lulling doctrine applies when the defendant "ha[s] done something that amounted to an affirmative inducement

to plaintiffs to delay bringing action." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (quotation marks omitted).

For example, in *William J. Davis, Inc. v. Young*, 412 A.2d 1187 (D.C. 1980), an employer manipulated an employee's reported hours to conceal from the employee the fact of his underpayment.  The District of Columbia Court of Appeals held that the employer could not assert a statute of limitations defense because his conduct had lulled the employee into inaction. *Id.* at 1193.  The court noted that the employee, a janitor, was unsophisticated and that the employer's actions demonstrated an intent to avoid paying his employee the minimum wage required by law.

Here, the Defendants lulled Ms. Kiwanuka into inaction by misleading her about her rights under state and federal law and perpetrating a complicated scheme involving multiple bank accounts to confuse her as to her actual pay.  *See supra* Part II.A.  Therefore, even  under District of Columbia law, the limitations period was tolled until Ms. Kiwanuka was finally free from the Defendants' control and able to assert her legal rights.  That occurred in August 2009, and she timely filed suit one year later. Complaint ¶ 80.

> **B.     Ms. Kiwanuka's Claims for Fraudulent Inducement and Fraud Permissibly Extend Back to Pre-2006 Acts.**

Ms. Kiwanuka raises claims for fraudulent inducement and fraud against Defendant Bakilana.   The Defendants inexplicably state that the alleged fraudulent behavior is confined to 2006.  Defs.' Memo. at 13.  There is no basis for this assertion.

Ms. Kiwanuka's fraudulent inducement claim incorporated and realleged all previous allegations.  Complaint ¶ 121.  The Complaint asserted that "Bakilana misrepresented to Ms. Kiwanuka the conditions of her employment and conditions in the United States in order to induce her to come to the United States."  *Id.* ¶ 122.  Taken together, these paragraphs

adequately allege fraudulent inducement in the first period from 2004-2006 as well as the second period in 2009.  The Complaint alleges that in both periods, Defendant Bakilana misrepresented to Ms. Kiwanuka the conditions of her employment.  *See id.* ¶ 20 (misrepresenting available educational opportunities in 2004); *id* ¶ 54 (misrepresenting the identity of Ms. Kiwanuka's employer in 2009); *id.* ¶ 55 (misrepresenting available educational opportunities in 2009).

Likewise, Ms. Kiwanuka's fraud claim incorporated all previous allegations, *id.* ¶ 155, and asserted that Ms. Kiwanuka relied on Defendant Bakilana's intentional misrepresentations to her detriment, *id.* ¶¶ 156-157.  Taken together these paragraphs allege fraud in the first period from 2004-2006 as well as the second period in 2009.  The Complaint alleges that in both periods, Defendant Bakilana misrepresented to Ms. Kiwanuka the conditions of her employment.  *See id.* ¶ 20 (misrepresenting available educational opportunities in 2004); *id* ¶ 54 (misrepresenting the identity of Ms. Kiwanuka's employer in 2009); *id.* ¶ 55 (misrepresenting available educational opportunities in 2009).

Ms. Kiwanuka concedes that her negligence claim is confined to the earlier 2004-2006 period.  However, for reasons already discussed, *supra* Part IV.A, this claim is not barred by the statute of limitations.

C.    **Ms. Kiwanuka's Claims for Emotional Distress Are Not Time-Barred and Are Well-Pled.**

The Defendants raise a statute of limitations argument with respect to Ms. Kiwanuka's claims for negligent and intentional infliction of emotional distress. As already discussed in significant detail, *supra* Part IV.A, these statute of limitations arguments must fail.

The Defendants further argue that Ms. Kiwanuka has failed to state a claim for negligent infliction of emotional distress because she has asserted no physical injury or impact.  This is incorrect.  As part of her claim for negligent infliction of emotional distress, Ms. Kiwanuka

incorporated each previously raised allegation.   Complaint ¶ 110.   This includes the allegation that Defendant Bakilana physically assaulted Ms. Kiwanuka by lifting her up by her shirt collar and screaming at her.   *Id.* ¶ 37. This allegation, which must be accepted as true, and all reasonable inferences to be drawn therefrom, are more than enough to satisfy Virginia's requirement that physical impact must accompany claims for negligent infliction of emotional distress. *See Kondaurov v. Kerdasha*, 629 S.E.2d 181, 186 (Va. 2006) (holding physical impact was sufficient to support damages for negligent infliction of emotional distress even where plaintiff made no claim that her mental condition was a result of actual physical injury).

As to Ms. Kiwanuka's claim for intentional infliction of emotional distress, the Defendants suggest it requires a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). Defs.' Memo. at 14-15.   In fact, the claim is pled with sufficient clarity and is in no way limited to events prior to 2006.   The claim incorporates by reference all prior allegations, Complaint ¶ 149, and further alleges that Defendant Bakilana daily "used her position of power and control over Ms. Kiwanuka to engage in an intentional pattern of outrageous verbal abuse against her," *id.* ¶ 151. The Complaint alleged that Defendant Bakilana intentionally interfered with Ms. Kiwanuka's attempts to form relationships or acquaintances, thereby deepening Ms. Kiwanuka's helplessness and isolation.   These allegations, taken together with the detailed narratives provided elsewhere in the Complaint, *see, e.g.*, *id* ¶¶ 26-41, 63-75, are more than enough to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

**V.     THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER MS. KIWANUKA'S STATE LAW CONTRACT CLAIMS AND THOSE CLAIMS ARE NEITHER TIME-BARRED NOR PRECLUDED BY CRIMINAL RESTITUTION PAID UNDER THE CRIMINAL CASE AGAINST DEFENDANT BAKILANA.**

Ms. Kiwanuka has asserted three claims for breach of contract, each related to separate employment agreements executed between herself and Defendant Bakilana.  The Defendants suggest that if Ms. Kiwanuka's federal claims fail, this Court may be divested of subject matter jurisdiction over these contract actions.[15]  Nevertheless, for reasons argued above, *supra* Parts I and II, Ms. Kiwanuka's federal claims remain robust and viable and this Court's supplemental jurisdiction remains intact pursuant to 28 U.S.C. § 1367.

The Defendants again raise a statute of limitations defense against these contract claims, this time offering arguments based on both District of Columbia and Virginia law.  Defs.' Memo. at 15-16.   Under the District of Columbia law, plaintiffs bringing contract actions must file within three years.  D.C. Code § 12-301.  This clearly does not affect Ms. Kiwanuka's Eleventh Claim, which concerns a contract breached in 2009—well within the statutory period.[16]

By contrast, the Virginia statute of limitations permits a five-year period for commencing legal action based on a signed contract.  Va. Code Ann. § 8.01-246(2).  This comfortably reaches

---

[15]   The Defendants also cryptically suggest, "[o]ut of an abundance of caution," "that there may be looming a question of this Court's" personal jurisdiction. Defs.' Memo. at 15.  They fail, however, to identify any basis for asserting lack of personal jurisdiction and make no legal, factual, or other arguments whatsoever regarding personal jurisdiction. This Court clearly has personal jurisdiction over both Defendants because both Defendants have attended university or worked within the District. Defendant Bakilana is an economist at the World Bank headquarters in Washington, D.C. and Defendant Rwehumbiza attended the George Washington University School of Business in Washington, D.C. *See*  George Washington University – Alumni Directory, Profile for Mr. Raymond Rwehumbiza (Exhibit C). Both Defendants have substantial contacts with this jurisdiction that are sufficient for this Court to assert personal jurisdiction over them.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[16]   Nevertheless, the Defendants inexplicably assert that Ms. Kiwanuka's contract claims allege a "'scheme' dat[ing] back to the 2004-2006 time frame. Under D.C. law, those claims are time barred, completely."  Defs.' Memo. at 16.  With respect to Ms. Kiwanuka's 2009 breach of contract claim this would be incorrect even if Ms. Kiwanuka's contract claims were not entitled to tolling.

back to include both the second and third breach of contract claims, which concern, respectively, alleged breaches in 2006 and 2009.  The Defendants' earlier embrace of Virginia law with respect to Ms. Kiwanuka's tort claims, Defs.' Memo. at 12, suggests that Virginia's law ought to apply as well to these contract claims.  In this instance, however, Defendants appear to have traded Virginia law to take advantage of the District of Columbia's shorter limitations period on contract actions.  That sort of "statute-shopping" is plainly impermissible.

On some level, however, the choice of which jurisdiction's statute of limitations rules to apply is irrelevant.  For reasons discussed at length elsewhere, *supra* Part IV.A, Virginia's statute of limitations would be reset with respect to Defendant Bakilana, Va. Code Ann. § 8.01-229(K), or tolled with respect to both Defendants, *id.* § 8.01-229(D); similarly, the District of Columbia's statute of limitations would be tolled by the lulling doctrine, *see, e.g.*, *Bailey*, 516 A.2d at 937; *William J. Davis, Inc.*, 412 A.2d at 1193; *Hornblower*, 31 App. D.C. at 75.  In other words, neither Virginia's nor the District of Columbia's statute of limitations would operate to bar Ms. Kiwanuka's contract claims.

Finally, Defendants repeat their arguments regarding Defendant Bakilana's criminal restitution judgment and suggest that judgment precludes Ms. Kiwanuka's civil contract claims. Again, this argument has been addressed and refuted elsewhere, *supra* Part II.B.  In sum, the restitution payment represents a *minimum* estimate of Ms. Kiwanuka's economic losses during the 2009 period only.  It bears no relationship to earlier contracts and, at best, may set-off—but not preclude—recovery for economic damages arising from the 2009 period.

## VI.   MS. KIWANUKA HAS ADEQUATELY PLED HER INVOLUNTARY SERVITUDE, TRAFFICKING, FORCED LABOR, FLSA, UNJUST ENRICHMENT, AND NEGLIGENCE CLAIMS AGAINST MR. RWEHUMBIZA.

Defendants argue that Ms. Kiwanuka's complaint fails to allege sufficient facts with respect to Mr. Rwehumbiza to hold him accountable for any of Ms. Kiwanuka's claims. Defs.' Memo. at 17-19. This is incorrect.

The Complaint clearly defines the term "Defendants" to refer *both* to Ms. Bakilana and Mr. Rwehumbiza. Complaint ¶ 1. As such, each and every allegation with respect to the "Defendants" necessarily alleges the participation and involvement of Mr. Rwehumbiza. Under the liberal notice pleading standard, this Court must accept each of those factual allegations as true and permit Ms. Kiwanuka the benefit of all reasonable inferences. On that basis, Ms. Kiwanuka's Complaint is more than sufficient to survive a motion to dismiss. With respect to the first three claims regarding involuntary servitude, the Complaint alleges that *both* Defendants forced Ms. Kiwanuka to perform household chores, *id.* ¶¶ 29, 68, and that *both* Defendants maintained Ms. Kiwanuka in a state of involuntary servitude and forced labor by threatening her with deportation, *id.* ¶¶ 34,67. Further, Ms. Kiwanuka's trafficking claim requires only that the Defendants harbored her in their home for the purpose of involuntary servitude. Thus, even if Defendant Rwehumbiza did not direct or induce such servitude (which Plaintiff does not concede), there is no doubt he harbored Ms. Kiwanuka in the home he shared with his wife, Defendant Bakilana, and is therefore liable under 18 U.S.C. § 1590. These claims are all well-pled with respect to Defendant Rwehumbiza.

Regarding her claim for damages under the FLSA, it was not necessary for Defendant Rwehumbiza to have signed a contract with Ms. Kiwanuka in order for him to be considered an employer. Insofar as Defendant Rwehumbiza acted "directly or indirectly in the interest of an employer [*e.g.*, Defendant Bakilana] in relation to an employee [*e.g.*, Ms. Kiwanuka]," he, too, is

considered an employer.  29 U.S.C. § 203(d).  In any event, Ms. Kiwanuka adequately alleges Defendant Rwehumbiza served in such a capacity, Complaint ¶ 100, and that he and his wife both failed to pay appropriate wages, *id.* ¶ 101.

With respect to her claim for unjust enrichment, Ms. Kiwanuka clearly alleges facts indicating Defendant Rwehumbiza was the beneficiary of her services, *see, e.g.*, *id.* ¶¶ 29, 68, 105, and that he failed to compensate her properly, *see, e.g.*, *id.* ¶¶ 101, 106.  This legitimately makes out a case against Defendant Rwehumbiza for unjust enrichment and constitutes a well-pled claim.

Ms. Kiwanuka concedes that she has not pled physical injury with respect to Defendant Rwehumbiza.  But physical injury is not required to prove her involuntary servitude, trafficking, forced labor, minimum wage, unjust enrichment, or negligence claims.  Regarding Ms. Kiwanuka's negligence claim, Ms. Kiwanuka has alleged that both Defendants—including Defendant Rwehumbiza—owed her a duty of care as employers and as de facto guardians.  *Id.* ¶ 116.  She has also alleged that the Defendants breached that duty by failing to obtain prompt medical care for Ms. Kiwanuka on two occasions, both involving physical injury and impact.  *Id.* ¶¶ 119-120.

The Defendants note the multiple instances in which Defendant Bakilana's conduct is singled out.  Defs.' Memo. at 17-18.  That is not surprising, however, given that Defendant Bakilana: a) has pled guilty in a federal criminal case and admitted to many of the acts alleged in the Complaint; and b) is a defendant on all thirteen counts while Defendant Rwehumbiza is a defendant on roughly half that number.  Furthermore, the Defendants' assertion that Defendant Rwehumbiza's refusal to assist Ms. Kiwanuka in retrieving her passport, *id.* at 17 (citing Complaint ¶ 27), somehow absolves him of responsibility for confiscating it is nonsensical.

Which spouse actually took the passport in the first instance is irrelevant.  It is reasonable to infer that the confiscation and refusal to return the passport were continuing harms in which both Defendants participated, both are implicated, and both share responsibility.

For the foregoing reasons, Ms. Kiwanuka has crafted well-pled claims against Defendant Rwehumbiza.  Construing all of her allegations as true and permitting her the benefit of all reasonable inferences, the facts alleged are more than enough to make out viable claims against Defendant Rwehumbiza.

**VII.     VENUE IS PROPER IN THIS DISTRICT.**

Defendants claim that venue is improper in the District of Columbia and that, pursuant to 28 U.S.C. § 1391(b), this case should be transferred to the Eastern District of Virginia. Defendants are incorrect.

Title 28 U.S.C. § 1391(b) requires that suit be brought in a jurisdiction wherein a defendant resides, wherein a substantial part of the events or omissions giving rise to the action occurred, or wherein a defendant may be found—"*except as otherwise provided by law*."  *Id.* (emphasis added).  And, in fact, a provision of law in the same section does provide otherwise: "An alien may be sued *in any district*."  28 U.S.C. § 1391(d) (emphasis added).

Critically, "§ 1391(d) is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that *suits against aliens are wholly outside the operation of all the federal venue laws*, general and special."  *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714, 92 S. Ct. 1936, 1941 (1972) (emphasis added).  The Defendants, both aliens, are excluded from the operation of venue laws, and there is no basis for them to seek transfer of this case to the Eastern District of Virginia or elsewhere.

**CONCLUSION**

WHEREFORE, Ms. Kiwanuka respectfully requests that this Court DENY Defendants'

Motion for Dismissal and/or Summary Judgment in its entirety and with prejudice.

Dated:  December 20, 2010                                   Respectfully submitted,


<u>/s/ Martina E. Vandenberg</u>
Martina E. Vandenberg
(D.C. Bar No. 476685)
Julie M. Carpenter
(D.C. Bar No. 418768)
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
Tel:  (202) 639-6046
Fax:  (202) 639-6066
mvandenberg@jenner.com
jcarpenter@jenner.com

*Counsel for Plaintiff*
*Sophia Kiwanuka*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2010, a true and correct copy of the foregoing was electronically filed in compliance with Local Civil Rule 5.4.  As such, this notice was served on all counsel who are deemed to have consented to electronic service.  I further certify that on the same day a true and correct copy of the foregoing was sent via first class mail to Charles F. Chester, Esq., 51 Monroe Place, Suite 707, Rockville, MD 20850.


/s/ Martina E. Vandenberg
Martina E. Vandenberg