**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

                                 )
                                 )
**SOPHIA KIWANUKA,**           )
      **Plaintiff,**          )
                                 )
      **v.**                    )      **Civil Case No. 10-1336 (RCL)**
                                 )
**ANNE MARGARETH BAKILANA,** _et al.,_  )
      **Defendants.**       )
                                 )
_____ )

## MEMORANDUM OPINION

This matter comes before the Court on defendants' Motion [8] to dismiss or in the alternative for summary judgment. Upon consideration of defendants' Motion [8], plaintiff's opposition [9], defendants' reply [10], plaintiff's notice of supplemental authority [14], the applicable law, and the entire record in this case, the Court will GRANT IN PART and DENY IN PART defendants' Motion. The Court will explain its reasoning in the analysis that follows.

### I.     FACTUAL BACKGROUND

The facts alleged in the complaint are taken as true for purposes of this Motion to dismiss. _See Hishon v. King & Spalding_, 467 U.S. 69, 73 (1984). Plaintiff Sophia Kiwanuka was born in Tanzania on December 27, 1983. Compl. ¶ 14. In 2004 and again in 2008, Ms. Kiwanuka signed an employment contract with defendant Anne Margareth Bakilana, pursuant to which Ms. Kiwanuka would travel from Tanzania to the United States to work as a domestic servant for Ms. Bakilana and her husband, defendant Raymond D. Rwehumbiza. _Id._ ¶¶ 1, 20, 24, 59. Ms. Bakilana and Mr. Rwehumbiza are Tanzanians who come from wealthy and influential families. _Id._ ¶ 17, 18. At the time of the events in question, Ms. Bakilana was

employed in Washington, D.C. as an economist for the World Bank Group. *Id.* ¶ 13.   Ms. Kiwanuka traveled to the United States in 2004 and again in 2009 under a G-5 non-immigrant visa, which was arranged by the defendants. *Id.* ¶ 12.   At the time of her arrival in the United States, Ms. Kiwanuka's English skills were limited. *Id.* ¶ 14.

When Ms. Kiwanuka first came to the United States in 2004, the defendants lived with their four-month-old son in Rosslyn, Virginia. *Id.* ¶ 13.   In 2005, the defendants moved to Falls Church, Virginia. *Id.*   When the defendants brought Ms. Kiwanuka back to the United States in 2009, they lived with their two sons in Falls Church, Virginia. *Id.*

Ms. Kiwanuka alleges that the defendants lured her to the United States with promises of reasonable working conditions, educational opportunities, and decent pay. *Id.* ¶¶ 1, 20, 55. However, Ms. Kiwanuka claims that upon both of her arrivals in the United States, the defendants confiscated her passport, held her in isolation, and used threats of deportation to manipulate her into working long hours as a domestic servant and nanny to their children. *Id.* ¶¶ 2, 3, 66–68.   Believing that if she stopped working for the defendants she would be deported within twenty-four hours, *id.* ¶ 28, Ms. Kiwanuka worked seven days a week, without breaks to rest or eat, *id.* ¶¶ 3, 69, 70, and allegedly endured Ms. Bakilana's regular verbal and psychological abuse, *id.* ¶¶ 35, 36.

In July 2009, the FBI launched an investigation into defendants' employment and exploitation of Ms. Kiwanuka in response to a tip of a possible human trafficking situation. *Id.* ¶ 4.   FBI officers provided Ms. Kiwanuka with a recording device, which she used to record her conversations with Ms. Bakilana. *Id.*   The recorded conversations captured Ms. Bakilana warning Ms. Kiwanuka that she would be immediately escorted out of the country by the FBI if she stopped working for the defendants. *Id.* Ex. B ("Bakilana Statement"), ¶ 14.

When FBI agents and a federal prosecutor questioned Ms. Bakilana, she willfully and knowingly made false statements about Ms. Kiwanuka's pay and the threats of deportation she used to control Ms. Kiwanuka. Compl. ¶¶ 5, 6. Ms. Bakilana subsequently pled guilty to two counts of knowingly and willfully making materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). *See* Compl. Ex. A ("Plea Agreement"), at 1. In the statement of stipulated facts that Ms. Bakilana signed in conjunction with her plea agreement, she admitted that Ms. Kiwanuka was "available for work for Ms. Bakilana seven days a week" and that Ms. Kiwanuka "worked more than 40 hours per week." Bakilana Statement ¶ 8. Ms. Bakilana further admitted that she "developed a scheme to prey upon [Ms. Kiwanuka's] lack of sophistication about bank accounting to obtain [Ms. Kiwanuka's] labor at a rate far below the . . . legally required minimum wage." *Id.* ¶ 9(b). As part of her plea agreement, Ms. Bakilana further admitted that Ms. Kiwanuka was the victim of an offense listed in 18 U.S.C. § 3663A(c)(1)(a) and that Ms. Bakilana therefore owed Ms. Kiwanuka restitution. *See* Plea Agreement at 5–6. On July 2, 2010, Ms. Bakilana was sentenced in the United States District Court for the Eastern District of Virginia to two years' probation and ordered to pay Ms. Kiwanuka $41,626.80 in restitution. Compl. ¶ 8.

In the present case, Ms. Kiwanuka seeks damages from Ms. Bakilana and Mr. Rwehumbiza for having been trafficked into the United States for forced labor. She also seeks damages for various state torts and additional unpaid wages. In Count I, plaintiff alleges that the defendants held her in involuntary servitude in violation of the Thirteenth Amendment to the U.S. Constitution and 18 U.S.C. § 1584. In Count II, plaintiff brings a claim under 18 U.S.C. § 1595 alleging that the defendants engaged in trafficking of Ms. Kiwanuka in violation of 18

U.S.C. § 1590.  In Count III, plaintiff alleges that defendants committed a forced labor violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1589.  In Count IV, plaintiff alleges that the defendants willfully failed to pay Ms. Kiwanuka federal statutory minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. 201 et seq., and regulations of the U.S. Department of Labor.  In Count V, plaintiff brings a claim for damages against the defendants based on the theory of unjust enrichment.  In Counts VI and VII, plaintiff brings claims of negligent infliction of emotional distress and negligence, respectively, against the defendants.  In Count VIII, plaintiff brings a claim of fraudulent inducement against Ms. Bakilana.  In Counts IX, X, and XI, plaintiff brings breach of contract claims against Ms. Bakilana.  And, in Counts XII and XIII, plaintiff brings claims of intentional infliction of emotional distress and fraud, respectively, against Ms. Bakilana.

Defendants move to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and statute of limitations grounds, and pursuant to Rule 12(b)(3) for improper venue.  In the alternative, defendants move for summary judgment.

## II.    LEGAL STANDARDS

### A.  Failure to State a Claim

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v.*

*District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  *Id.*  In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton*, 567 F.3d at 681.

### B.  Statute of Limitations

The affirmative defense of statute of limitations may be raised via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  Because, however, statute of limitations issues often turn on contested questions of fact, the Court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Rather, the Court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  If "no reasonable person could disagree on the date" on which the cause of action accrued, the Court may dismiss a claim on statute of limitations grounds.  *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

### C.  Summary Judgment

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Under Federal Rule of Civil Procedure 56(c), summary

judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In order to defeat summary judgment, a factual dispute must be capable of affecting the substantive outcome of the case and be supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[, and t]he moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and disposed of pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### D. Venue

Where the district court's jurisdiction "is not founded solely on diversity of citizenship," 28 U.S.C. § 1391(b) requires that suit be brought in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2)

"a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action"—"except as otherwise provided by law." 28 U.S.C. § 1391(b). A provision of law in the same section provides that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d) (2002).[1]

## III. ANALYSIS

### A. Involuntary Servitude, Trafficking, and Forced Labor Claims

In her complaint, Ms. Kiwanuka alleges that the defendants subjected her to involuntary servitude in violation of the Thirteenth Amendment and 18 U.S.C. § 1584;[2] trafficked her into the United States for the purpose of subjecting her to involuntary servitude in violation of 18 U.S.C. § 1590;[3] and subjected her to forced labor in violation of 18 U.S.C. § 1589.[4] Defendants move to dismiss these claims pursuant to Rule 12(b)(6), arguing that Ms. Kiwanuka's allegations are insufficient as a matter of law to support any claims for involuntary servitude. Defendants

---

[1] The venue provision was amended at the end of 2011 and became effective beginning on December 7, 2011. However, the amended venue provision does not apply to the present case because it was commenced before that date. *See* 28 U.S.C. § 1391 (2011) (note). The amended venue provision changes the venue rules as applied to alien defendants. The amendment provides that for venue purposes, "a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1) (2011). Furthermore, under the amendment, "a defendant not resident in the United States may be sued in any judicial district." *Id.* § 1391(c)(3).

[2] The Thirteenth Amendment prohibits slavery and involuntary servitude, and gives Congress the power to enact appropriate legislation to enforce this prohibition. *See* U.S. Const. amend. XIII, §§ 1, 2. 18 U.S.C. § 1584 provides that a person who "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1584(a).

[3] "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1590(a).

[4] "Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be [fined under this title, imprisoned not more than 20 years, or both]." 18 U.S.C. § 1589(a).

suggest that the complaint alleges nothing more than that Ms. Bakilana occasionally yelled at Ms. Kiwanuka, contending that such psychological coercion falls short of the "use or threatened use of physical or legal coercion" required by *United States v. Kozminski*, 487 U.S. 931, 948 (1988).

This argument is without merit. *Kozminski* is not controlling, as Congress has specifically addressed the *Kozminski* decision and rejected it as too narrow. In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464. Rejecting *Kozminski*'s restrictions, Congress determined that "[i]nvoluntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion." *Id.* § 102(b)(13). Congress therefore added 18 U.S.C. §§ 1589 and 1590 "to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers . . . restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence," and to "combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*." H.R. Rep. No. 106-939, at 101 (2000) (Conf. Rep.). Accordingly, the TVPA defines "involuntary servitude" as including a condition of servitude induced by means of "the abuse of the legal process." TVPA § 103(5)(B). And the TVPA provision on forced labor, codified at 18 U.S.C. § 1589, includes "the abuse or threatened abuse of law or legal process" as a basis for a claim of forced labor. Furthermore, many courts have determined that threats of deportation constitute a condition of servitude induced through abuse of the legal process. *See, e.g.*, *U.S. v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008); *Ramos v. Hoyle*, 2008 WL 5381821, at *4 (S.D. Fla. 2008); *United States v. Garcia*, 2003 WL 22938040, at *4 (W.D.N.Y. 2003).

Defendants have overlooked the numerous allegations in plaintiff's complaint that defendants abused the legal process by threatening her with deportation should she fail to perform the work demanded of her. *See* Compl. ¶¶ 2, 28, 34, 67, 79. As alleged in the complaint, the FBI obtained recordings of Ms. Bakilana making just such a threat during its investigation into the defendants' trafficking of Ms. Kiwanuka. As alleged in the complaint, Ms. Bakilana is recorded as saying, "They will take you right now to board a night plane for your return. Okay? I can make a phone call to the FBI, they will bring you your passport on Monday. Monday night you will board a plane because your visa would have been cancelled. Choose." Compl. ¶ 79. Furthermore, Ms. Bakilana has acknowledged that she "in fact did make such threats to call the FBI to escort [Ms. Kiwanuka] out of the country if [Ms. Kiwanuka] followed through on her decision to terminate her employment." Bakilana Statement ¶ 17(c).

In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008), "with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 417 F.3d 169, 173 (D.C. Cir. 2006). In her complaint, Ms. Kiwanuka provides detailed descriptions of her alleged forced labor and condition of servitude. *See* Compl. ¶¶ 26–33, 63–75. She alleges that the defendants threatened abuse of the legal process—in particular, involvement of the FBI and deportation—sufficient to establish involuntary servitude. *See id.* ¶¶2, 28, 34, 67, 79. As such, her complaint states a claim upon which relief can be granted under 18 U.S.C. §§ 1584, 1589, and 1590. The Court therefore denies defendants' Motion to dismiss with respect to these claims.

### B.  Effect of Criminal Restitution Award on Subsequent Civil Action

Defendants argue that Ms. Bakilana's restitution payment of $41,626.80 pursuant to the judgment in her criminal case precludes Ms. Kiwanuka from seeking civil damages in the present suit with respect to her Fair Labor Standards Act ("FLSA"), unjust enrichment, and contract claims.  According to the defendants, the plaintiff has already had her wages paid through this restitution award, and to allow Ms. Kiwanuka's claims to proceed past this stage of the litigation would let her seek a double recovery.

The defendants rely on *United States v. Coleman*, 977 F.2d 1101 (5th Cir. 1993) to advance their argument.  *Coleman* concerned the effect of a prior civil settlement on a subsequent criminal restitution order.  *Coleman*, 977 F.2d at 1106.  In that case, the government was a party to both the civil settlement and the later criminal proceedings.  *Id.* at 1107.  The civil settlement in *Coleman*, to which the government was a party, "settle[d] fully and finally all differences between [the parties], relating to all claims and demands which are based in whole or in part upon the facts alleged in the [civil] case." *Id.*

*Coleman* is inapposite here for a number of reasons.  First, in this matter, the government previously obtained a criminal restitution judgment, and the question is now what effect it may have on Ms. Kiwanuka's ability to subsequently seek civil damages.  Second, Ms. Kiwanuka was not a party to the criminal matter prosecuted against Ms. Bakilana, nor was she a party to the plea agreement reached with Ms. Bakilana.  Finally, Ms. Kiwanuka has never negotiated or agreed to a release of claims against the defendants.  Because Ms. Kiwanuka was not a party to Ms. Bakilana's criminal plea agreement or the restitution order, she cannot be bound by it.  Moreover, the plea agreement does not contain any language addressing potential civil lawsuits. *See* Plea Agreement.

Federal criminal procedure law also precludes defendants' argument that Ms. Kiwanuka's civil claims are barred by prior criminal restitution payments. It is well established that an order of restitution does not bar subsequent civil suits; at most, it may offset any future recovery of compensatory damages for the same loss. "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding . . . ." 18 U.S.C. § 3664(j)(2).

Defendants' argument that plaintiff's FLSA, unjust enrichment, and contract claims are barred by the prior criminal restitution order is therefore without merit. Taking Ms. Kiwanuka's allegations as true and accepting all reasonable inferences in her favor, there is no basis to dismiss Ms. Kiwanuka's FLSA, unjust enrichment, and contract claims. To the extent that Ms. Kiwanuka prevails upon these claims on the merits, the prior criminal restitution order may provide a partial setoff against her award.

### 1. *Fair Labor Standards Act Claim*

Ms. Kiwanuka's claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., asserts that the defendants failed to pay her the statutorily required minimum wage during her periods of employment. The FLSA provides that any employee "who in any workweek is employed in domestic service in a household shall be paid" a minimum hourly wage, with certain exceptions, and prohibits an employer from employing an employee in domestic service for a workweek that exceeds 40 hours unless the employee receives overtime compensation. 29 U.S.C. §§ 206(f), 207(l). "[A]ny employee who is employed in domestic service in a household and who resides in the household" is exempt from this requirement. *Id.* § 213(b)(21). Defendants argue, and Ms. Kiwanuka concedes, that in accordance with 29 U.S.C. § 213(b)(21),

Ms. Kiwanuka is not entitled to overtime payment at one-and-a-half times her normal hourly rate.

However, the exemption in § 213(b)(21) "does not excuse the employer from paying the live-in worker at the applicable minimum wage rate for all hours worked."  29 C.F.R. § 552.102(a).  In calculating the restitution payment ordered in Ms. Bakilana's criminal case, the U.S. Department of Labor calculated that Ms. Kiwanuka worked 24 hours a day.  *See* Pl.'s Opp. Ex. A, at 2.  The $41,626.80 restitution payment covers the value of Ms. Kiwanuka's services—as calculated by the Department of Labor and measured at the prevailing, fair market rate—for the period from January 18, 2009 through August 1, 2009, exclusive of the $300 monthly payments the defendants provided to Ms. Kiwanuka.  *See id.*  However, Ms. Kiwanuka has alleged that she is entitled to damages under the FLSA for additional time periods that are not reflected in the criminal restitution order.  Thus, the payment of restitution did not reflect the liquidated damages, attorney's fees, and costs available under the FLSA, nor did it reflect additional time periods for which Ms. Kiwanuka alleges that she is entitled to unpaid minimum wages.  *See* 29 U.S.C. § 216(b).  An award under the FLSA is not barred—it would merely be set off by the prior restitution payment.

### 2.  *Unjust Enrichment Claim*

Ms. Kiwanuka's unjust enrichment claim alleges that the defendants were unjustly enriched insofar as they accepted Ms. Kiwanuka's services but failed to compensate her adequately.  This claim covers the periods of time that Ms. Kiwanuka worked for the defendants: May 2004 through July 2006, and January 2009 through August 2009.  However, the restitution order covers only the period of January 2009 through August 2009.  *See* Pl.'s Opp. Ex. A. Therefore, just like her FLSA claim, Ms. Kiwanuka's claim for damages on the theory of unjust

enrichment is not barred by the prior criminal restitution order; rather, any recovery under this theory will be set off by the prior restitution payment.

### 3.  Breach of Contract Claims

Ms. Kiwanuka brings three separate claims for breach of contract against Ms. Bakilana with regard to employment agreements entered into in 2004, 2006, and 2009.  *See* Compl. ¶¶ 132, 138, 144.  Ms. Bakilana argues that the $41,626.80 restitution order was intended to cover the minimum wages Ms. Bakilana owed to Ms. Kiwanuka, and are enough to cover the debt allegedly owed under the contracts.  Thus, Ms. Bakilana argues, Ms. Kiwanuka's breach of contract claims have been satisfied and should be dismissed.  However, the restitution payment represents Ms. Kiwanuka's unpaid minimum wages for the 2009 period only.  *See* Pl.'s Opp. Ex. A.  Any recovery for the plaintiff under her breach of contract claims will therefore be set off by—rather than precluded by—the prior restitution payment.

### C.  Statute of Limitations

The defendants also move to dismiss Counts IV, V, VI, VII, VIII, XII, and XIII under Rule 12(b)(6), arguing that each claim is time-barred by the applicable statute of limitations.

### 1.  Fair Labor Standards Act Claim

Defendants argue that plaintiff's FLSA claim should be dismissed because it is time-barred.  Under the FLSA, any action to enforce a cause of action for unpaid minimum wages must "be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

The FLSA is subject to the doctrine of equitable tolling, however.  Equitable tolling is appropriate "where the complainant has been induced or tricked by his adversary's misconduct

into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans*, 498 U.S. 89, 96 (1990).  In *Deressa v. Gobena*, 2006 WL 335629 (E.D. Va. Feb. 13, 2006), the plaintiff—an Ethiopian national—claimed that the defendants had trafficked her, held her as a "virtual prisoner" by withholding her passport, told her she would be arrested if she left their house, and misrepresented that they were holding her money for her.  *Id.* at *1, *3.  The court determined that these allegations were sufficient to toll the statute of limitations.  *Id.* at *3.

Here, Ms. Kiwanuka has alleged that the defendants trafficked her for the purpose of holding her in forced labor and that she was controlled and manipulated by the defendants' actions, including their confiscation of her passport and threats of deportation.  Ms. Bakilana has even admitted that she "developed a scheme to prey upon [Ms. Kiwanuka's] lack of sophistication about bank accounting to obtain [Ms. Kiwanuka's] labor at a rate far below the contractually and/or legally required minimum wage rate."  Bakilana Statement ¶ 9(b).  Ms. Kiwanuka also alleges that Ms. Bakilana intentionally exploited Ms. Kiwanuka's limited English proficiency, purposefully mis-translating and withholding critical information regarding domestic workers' legal rights during a World Bank workshop on the rights of domestic servants employed by World Bank personnel.  Compl. ¶ 28.  Ms. Kiwanuka further alleges that the defendants refused to pay Ms. Kiwanuka her promised wages, misrepresenting Ms. Kiwanuka's ownership and control rights to a bank account that Ms. Kiwanuka shared with Ms. Bakilana.  Compl. ¶ 42.  Specifically, Ms. Kiwanuka alleges that Ms. Bakilana directed and controlled the account and instructed Ms. Kiwanuka never to open or read any statements or other correspondence regarding the account, and that Ms. Bakilana's misrepresentations caused Ms. Kiwanuka to believe that she did not have co-ownership or control of the account—rendering Ms. Kiwanuka's legal rights to the account ineffective.  *Id.* ¶¶ 43, 46.

Additionally, Ms. Kiwanuka alleges that the defendants took affirmative steps to prevent Ms. Kiwanuka from initiating legal proceedings to vindicate her rights.  While Ms. Kiwanuka was in the United States, the defendants confiscated her identity documents and passport, threatened her with deportation, and forced her to remain completely dependent upon them.  *Id.* ¶¶ 27, 34.  And when Ms. Kiwanuka returned to Tanzania, Ms. Bakilana refused to return Ms. Kiwanuka's passport, and Ms. Bakilana's family retained possession of Ms. Kiwanuka's passport and belongings.  *Id.* ¶¶ 50, 52.

At the present stage, these allegations are sufficient to establish a claim of equitable tolling.  The Court finds that the plaintiff has made an adequate showing that the statute of limitations did not begin to run until July 2009, when Ms. Kiwanuka's first contact and cooperation with the FBI took place.  Therefore, regardless of whether the two-year or three-year statute of limitations in 29 U.S.C. § 255(a) applies, Ms. Kiwanuka's complaint—filed in August 2010—was timely filed.  Accordingly, dismissal of Ms. Kiwanuka's FLSA complaint on statute of limitations grounds would be improper.

### 2.  State Law Claims

The defendants also argue that the plaintiff's state law claims are time-barred by the applicable statute of limitations.  Without engaging in a choice-of-law analysis, both parties seem to agree that Virginia law provides the applicable statute of limitations for each of these state law claims.  However, to determine which state's law applies, the Court must use the choice-of-law rules of the District of Columbia.  *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009).  The District of Columbia blends a "governmental interests analysis" with a "most significant relationship" test.  *Id.*  (citing *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 & n.18 (D.C. 1989)).  Under the governmental interests

analysis, courts must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied. *Id.* This typically leads to the application of the law of the plaintiff's domicile, as the state with the greatest interest in redressing injuries to its citizens. *Kirschenbaum v. Islamic Republic of Iran*, 572 F. Supp. 2d 200, 210 (D.D.C. 2008). To determine which jurisdiction has the most significant relationship to a case, courts must consider (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Id.*

Applying the District of Columbia's choice-of-law rules, the Court agrees with the parties that Virginia law governs Ms. Kiwanuka's substantive state law claims. However, the District of Columbia's choice-of-law rules consider the statute of limitations to be a procedural, not a substantive, matter. *Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25 (D.D.C. 2005); *see also A.I. Trade Finance v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). Accordingly, the District of Columbia's statute of limitations governs here.

Under District of Columbia law, a plaintiff must bring a claim for unjust enrichment within three years from the time of accrual of the action. D.C. Code § 12-301(8). The same three-year statute of limitations applies to tort claims and breach of contract claims. *See id.* §§ 12-301(7), (8). The defendants argue that the plaintiff's unjust enrichment, tort, and breach of contract claims are time-barred and should be dismissed. However, District of Columbia courts recognize a restricted equitable tolling doctrine, which "allows a plaintiff to initiate an action beyond the statute of limitations . . . [if the] defendant's fraudulent concealment or misconduct lulled the plaintiff into allowing the filing deadline to pass (often called the 'lulling doctrine')."

*Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 34 (D.D.C. 2008).  The lulling doctrine applies when the defendant "ha[s] done something that amounted to an affirmative inducement to plaintiffs to delay bringing action."  *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986).

Here, Ms. Kiwanuka has alleged that the defendants lulled her into inaction by exploiting her limited knowledge of English, misleading her about her rights under state and federal law, and perpetrating a scheme involving multiple bank accounts to confuse her as to her actual pay. *See* Compl. ¶ 28; Bakilana Statement ¶ 9(b).  Moreover, Ms. Kiwanuka has alleged that while she was in the United States working for the defendants, as well as when she returned home to Tanzania from 2006 through 2009, the defendants took affirmative steps to prevent Ms. Kiwanuka from initiating legal proceedings to vindicate her rights—including confiscating her identity documents and passport and keeping her in isolation.  *See* Compl. ¶¶ 27, 52.   Ms. Kiwanuka has sufficiently pled facts to support her assertion that the defendants lulled her into inaction with respect to bringing her state law claims.  Under District of Columbia law, the statute of limitations was tolled on these claims until Ms. Kiwanuka was free from the defendants' control and able to assert her legal rights in July 2009, when her first contact with the FBI took place.  As Ms. Kiwanuka filed suit in August 2010, the Court finds that these claims were timely filed and therefore cannot be dismissed on statute of limitations grounds.

### D.  Emotional Distress Claims

The defendants also argue that plaintiff's claims for negligent infliction of emotional distress (Count VI) and intentional infliction of emotional distress (Count XII) should be dismissed.

With respect to plaintiff's claim for negligent infliction of emotional distress, the defendants argue that she has asserted no physical injury or impact, and thus her claim is

deficient on its face and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In *Hughes v. Moore*, 197 S.E.2d 214 (1973), the Supreme Court of Virginia announced that "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone." *Id.* at 219. As part of Ms. Kiwanuka's claim for negligent infliction of emotional distress, her complaint incorporates each previously raised allegation. Compl. ¶ 110. This includes the allegation that Ms. Kiwanuka suffered physical impact when Ms. Bakilana lifted Ms. Kiwanuka up by her shirt collar and screamed at her. *Id.* ¶ 37. This allegation and all reasonable inferences to be drawn therefrom satisfy Virginia's requirement that physical impact accompany claims for negligent infliction of emotional distress, at least as to Ms. Bakilana. Ms. Kiwanuka has not, however, pled physical injury with respect to Mr. Rwehumbiza. The Court therefore finds that the plaintiff has adequately pled a claim of negligent infliction of emotional distress as to Ms. Bakilana, but plaintiff's claim of negligent infliction of emotional distress should be dismissed as to Mr. Rwehumbiza.

With respect to plaintiff's claim for intentional infliction of emotional distress, the defendants suggest that it requires a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). However, the Court finds that the claim is pled with sufficient clarity and is not limited to events prior to 2006. The claim incorporates by reference all prior allegations, Compl. ¶ 149, and further alleges that on a daily basis, Ms. Bakilana "used her position of power and control over Ms. Kiwanuka to engage in an intentional pattern of outrageous verbal abuse against her," *id.* ¶ 151. The complaint further alleges that Ms. Bakilana intentionally interfered with Ms. Kiwanuka's attempts to form relationships or acquaintances, thereby deepening Ms. Kiwanuka's suffering of isolation and distress. *Id.* ¶ 152. These allegations, taken together with the detailed

narratives provided elsewhere in the complaint, present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2).

### E. Liability of Mr. Rwehumbiza

Counts I through VII of the complaint make claims against both defendants. Mr. Rwehumbiza argues that none of these claims are adequately pled against him and therefore should be dismissed. As explained above, the plaintiff has not sufficiently pled a claim of negligent infliction of emotional distress as to Mr. Rwehumbiza. However, as to the first three claims regarding involuntary servitude, the complaint alleges that both defendants forced Ms. Kiwanuka to perform household chores, and that both defendants maintained Ms. Kiwanuka in a state of involuntary servitude and forced labor by threatening her with deportation. *See* Compl. ¶¶ 29, 34, 67, 68. In her FLSA claim, the plaintiff adequately alleges that Mr. Rwehumbiza served as her employer and that he and his wife failed to pay the plaintiff the appropriate wages. *See id.* ¶¶ 100, 101; 29 U.S.C. § 203(d). The plaintiff's unjust enrichment claim clearly alleges facts showing that Mr. Rwehumbiza was the beneficiary of her household services and that he failed to compensate her properly. *See* Compl. ¶¶ 29, 68, 101, 105, 106. And the plaintiff's negligence claim alleges that both defendants owed the plaintiff a duty of care as employers and as de facto guardians, and that they breached that duty by failing to obtain prompt medical care for the plaintiff on two occasions, thereby causing harm to the plaintiff. *See id.* ¶¶ 116, 119, 120. The Court therefore finds that the remaining counts against Mr. Rwehumbiza—Counts I through V and Count VII—plead facts against Mr. Rwehumbiza with sufficient particularity to survive a motion to dismiss.

### F.  Venue

Defendants also bring their motion to dismiss on the basis of improper venue pursuant to Rule 12(b)(3).  They claim that venue is improper in the District of Columbia and that, pursuant to 28 U.S.C. § 1391(b), this case should be transferred to the Eastern District of Virginia.

Although Ms. Bakilana works in the District of Columbia and Mr. Rwehumbiza attends school in the District of Columbia, *see* Pl.'s Opp. Ex. C, at all times during the events alleged in the complaint, the defendants resided in the Eastern District of Virginia.  Moreover, the alleged events all took place at the defendants' home in the Eastern District of Virginia.  However, as plaintiffs point out, neither defendant is a United States citizen, and "[a]n alien may be sued in any district."  28 U.S.C. § 1391(d) (2002).  This provision "is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special."  *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972).  The Court therefore finds the plaintiff's choice of forum to be proper and denies the defendants' motion to dismiss on the basis of Rule 12(b)(3).

### G.  Jurisdiction

The defendants suggest that if Ms. Kiwanuka's federal claims fail, this Court may be divested of subject matter jurisdiction over Ms. Kiwanuka's contract claims.  However, for the reasons articulated above, Ms. Kiwanuka's federal claims remain viable and this Court's supplemental jurisdiction remains intact pursuant to 28 U.S.C. § 1367.

The defendants also hint that there may be a question of this Court's personal jurisdiction.  They fail, however, to identify any basis for asserting lack of personal jurisdiction and make no legal, factual, or other arguments whatsoever regarding personal jurisdiction.  The

facts alleged in the complaint clearly establish this Court's personal jurisdiction over both defendants. Ms. Bakilana is an economist at the World Bank headquarters in Washington, D.C. and Mr. Rwehumbiza attended the George Washington University School of Business in Washington, D.C. These substantial contacts with the District are sufficient for this Court to exercise personal jurisdiction over them. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### H.  Summary Judgment

The defendants have not demonstrated that there is no genuine issue as to any material fact such that they are entitled to judgment as a matter of law. The Court therefore denies the defendants' motion in the alternative for summary judgment.

### IV.    CONCLUSION

For the foregoing reasons, defendants' Motion to dismiss is GRANTED IN PART and DENIED IN PART, and the Court will dismiss Count VI as to defendant Rwehumbiza. A separate Order consistent with this Memorandum Opinion will issue this date.

Signed by Royce C. Lamberth, United States District Judge, on February 24, 2012.